IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

| | | |
|---|---|---|
| ETHEL FAYE GEORGE, | ) | FOR PUBLICATION |
| | ) | |
| Plaintiff-Appellant, | ) | Filed: October 7, 1996 |
| | ) | |
| v. | ) | DAVIDSON CIRCUIT |
| | ) | |
| CLYDE WAYNE ALEXANDER, | ) | Hon. Marietta Shipley, Judge |
| and PHILLIP R. JONES, M.D., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | No. 01-S01-9505-CV-00084 |

For Plaintiff-Appellant:

R. Stephen Doughty
Weed, Hubbard, Berry & Doughty
Nashville, Tennessee

For Defendants-Appellees:

Rose P. Cantrell
George A. Dean
Parker, Lawrence, Cantrell & Dean
Nashville, Tennessee



O P I N I O N

**FILED**

**October 7, 1996**

**Cecil W. Crowson**
**Appellate Court Clerk**

COURT OF APPEALS REVERSED.                    DROWOTA, J.

    In this medical malpractice case, the plaintiff, Ethel Faye George, appeals from

the Court of Appeals' affirmance of a judgment based on a jury verdict in favor of the defendants, Clyde Wayne Alexander, M.D. and Phillip R. Jones, M.D. This case presents the following issue for our determination: whether a defendant in a negligence case must, pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure, plead comparative fault as an affirmative defense if the defendant wishes to introduce evidence that a person other than itself caused the plaintiff's injury. We conclude that the defendant is required to affirmatively plead comparative fault in such a situation; and because that was not done in this case, we reverse the judgment of the Court of Appeals.

## FACTS AND PROCEDURAL HISTORY

In October 1989 the plaintiff was admitted to West Side Hospital in Nashville for gynecological surgery. In order to prepare the plaintiff for the surgery, Dr. Jones, an anesthesiologist, began to administer spinal anesthesia. As he tried to insert a needle into her lower back for this purpose, however, Ms. George allegedly experienced pain in her right leg and told Dr. Jones of this pain. Dr. Jones then withdrew the needle and attempted twice more to administer the anesthesia; but Ms. George allegedly experienced pain in her right leg each time. Thereafter, Dr. Jones called Dr. Alexander, another anesthesiologist, into the room to assist him. When Dr. Alexander attempted to insert the needle, Ms. George allegedly again experienced pain. The defendants eventually were successful in anesthetizing the plaintiff; and she was placed in the "lithotomy position" for surgery by nurses under the direction of James Daniell, Jr., M.D., the surgeon. Dr. Daniell then carried out the surgery.

2

Immediately after the operation, Ms. George experienced pain extending down her right leg into her foot; she was unable to flex her right foot and felt pain when pressure was applied to her right leg. It has since become clear, and it is undisputed here, that Ms. George suffered damage to two different nerve roots during the operation. As a result of this injury, she is unable to flex her right foot, has no right ankle reflex, and continues to have pain and loss of sensation in her foot and portions of her right leg. Because of this condition, she must wear a brace and sometimes uses crutches or a wheelchair; moreover, her condition is permanent.

In October 1990 Ms. George brought an action against Doctors Jones and Alexander, alleging that their negligence in administering the spinal anesthesia proximately caused her injuries. The defendants answered the complaint, denying any negligence and reserving the right to assert additional defenses as they became known through the discovery process. The defendants never amended their answer to include additional defenses. Furthermore, the plaintiff propounded interrogatories to the defendants asking if it was their position that the injuries had been caused by another person. The defendants responded that they had no definitive opinion as to the cause of plaintiff's injuries. This response was also never amended.

In October 1993 plaintiff's counsel took the deposition of Vaughn Allen, M.D., the neurosurgeon who had treated Ms. George for her injuries. In the course of the deposition, Dr. Allen explained that Ms. George had suffered injuries to two separate nerve roots. Dr. Allen also stated that in his opinion there were two possible explanations for the injuries: (1) that they had occurred as a result of the spinal anesthetic; and (2) that they had occurred as a result of improper positioning during

3

surgery. As to the first possible cause, Dr. Allen testified that because the needle used during the spinal was very small, and because the likelihood of hitting two separate nerve roots with the needle is negligible, the injury could not have been caused by the anesthetic unless the plaintiff had a "conjoined nerve root" -- a rare anatomic condition whereby two nerves are enclosed in a single protective sheath. Dr. Allen discounted this possibility, however, based on his analysis of a myelogram report and an MRI scan. Thus, Dr. Allen concluded that although it was thereoretically possible that Ms. George's injuries could have been caused by the spinal anesthetic, it was highly unlikely. With regard to the other possible cause, Dr. Allen first stated that proper positioning of a patient's body during surgery is crucial, and that ensuring that the patient is properly positioned is the primary responsibility of the surgeon performing the operation. Dr. Allen testified that improper positioning of the body could cause a "stretch injury" to the nerves, but that a stretch injury is highly unlikely if the patient is actually positioned correctly. With regard to the latter point, Dr. Allen testified as follows when questioned by the plaintiff's attorney:

> Q: Doctor, do you have an opinion within a reasonable degree of medical certainty that improper positioning of Ms. George for this surgery she had was the cause of her nerve damage to her leg?
>
> A: In my opinion that would be the plausible cause, yes sir.
>
> Q: So that would be your opinion within a reasonable degree of medical certainty?
>
> A: Yes, it would.
>
> Q: And it is your -- do you have an opinion within a reasonable degree of medical certainty, doctor, that improper positioning of the patient would not occur, normally not occur if the patient was positioned within the standard of care for the physicians involved?
>
> A: Yes. As I have testified before, unless there was some underlying

4

anatomic reason which I don't believe Ms. George has, that would be an accurate statement as well.

...

Later in the deposition Dr. Allen testified as follows when asked about the "lithotomy position":

> Q: Doctor, assuming someone is properly positioned in the lithotomy position ..., do you have an opinion within a reasonable degree of medical certainty that that person, if they were properly positioned in a lithotomy position, would have an injury such as Ms. George has?
>
> A: It would be profoundly unlikely that with proper positioning that one would end up with a nerve injury.
>
> Q: So would you have an opinion within a reasonable degree of medical certainty that -- if, as you opine, this was caused by a stretch injury, would you have an opinion within a reasonable degree of medical certainty that there was improper positioning?
>
> A: Either improper positioning initially or as the case went on stretch injury involving improper positioning such as pushing against her legs or something of that nature, but my answer would be yes.
>
> ...

(Emphasis added).

The defendants subsequently filed a notice of intent to offer the deposition of Dr. Allen at trial. The plaintiff responded by filing a motion to exclude the testimony, contending that, pursuant to Rule 8.03, Tenn. R. Civ. P., the defendants had a duty to plead comparative fault as an affirmative defense if they wished to offer evidence that another person had caused the injury, and that the defendants had failed to so plead. The trial court denied the plaintiff's motion, and the videotape of Dr. Allen's deposition was played to the jury. Moreover, the defendants' counsel used the

5

deposition to cap off his closing argument, contending that: "[l]adies and gentlemen, the proof looked at demonstrates conclusively through Dr. Allen that the lithotomy position may very well have been the way that the injury was caused here, the surgery position. Thank you very much. " The jury returned a verdict in favor of the defendants; and the trial court entered judgment upon that verdict.

The plaintiff appealed to the Court of Appeals, which affirmed the trial court's judgment. We granted the plaintiff's Rule 11 application to address this issue of first impression concerning Rule 8.03, Tenn. R. Civ. P.

## ANALYSIS

Rule 8.03 of the Tennessee Rules of Civil Procedure, entitled "Affirmative Defenses," provides in pertinent part that: "[i]n pleading to a preceding pleading, a party shall set forth affirmatively facts in short and plain terms relied upon to constitute ... comparative fault (including the identity or description of any other alleged tortfeasors) ... ". (Emphasis added.) The "comparative fault" language was added to the rule in July 1993 by the Advisory Commission, which explained the amendment as follows:

> 'Comparative fault' is substituted for 'contributory negligence' in light of McIntyre v. Balentine, 833 S.W.2d 52 (Tenn. 1992). Note that the defendant must identify or describe other alleged tortfeasors who should share fault, or else the defendant normally would be barred from shifting blame to others at trial.

(Emphasis added.)

6

The plaintiff argues that because the deposition of Dr. Allen was offered for the sole purpose of shifting the blame for the injuries away from the defendants and onto Dr. Daniell -- the surgeon primarily responsible for positioning the patient -- Rule 8.03 required the defendants to affirmatively plead Daniell's fault as a defense. As support for this argument, the plaintiff also cites the following language from McIntyre:

> [F]airness and efficiency require that defendants called upon to answer allegations in negligence be permitted to allege, as an affirmative defense, that a nonparty caused or contributed to the injury or damage for which recovery is sought. In cases where such a defense is raised, the trial court shall instruct the jury to assign this nonparty the percentage of the total negligence for which he is responsible ...

McIntyre, 833 S.W.2d at 58.

In response, the defendants argue that Rule 8.03 is triggered only when the defendant seeks to show that another person was legally at fault for the plaintiff's injuries. Because negligence, the type of legal fault at issue here, requires proof of the elements of duty, breach of duty, causation in fact, proximate causation and injury, see McClenahan v. Cooley, 806 S.W.2d 767, 774 (Tenn. 1991), the defendants contend that Rule 8.03 does not apply unless they attempted to prove that Dr. Daniell's conduct satisfied all these elements. The defendants then contend that they introduced Dr. Allen's testimony simply to show that Dr. Daniell's actions were the factual cause of the plaintiff's harm. Because, the defendants assert, the testimony only pertains to one element of negligence, that of causation in fact, and does not cover the additional element of proximate causation, they did not attempt to prove that Dr. Daniell was negligent in a legal sense. Thus, they conclude, Rule 8.03 did not come into play.

7

While the defendants' position seems plausible at first blush, its assumption that proof of proximate cause is necessary to "shift the blame" to another is unfounded. Since proximate cause is actually just a policy decision of the judiciary to "deny liability for otherwise actionable causes of harm,"[1] see Kilpatrick v. Bryant, 868 S.W.2d 594, 598 (Tenn. 1993); Joseph H. King, Jr., Causation, Valuation and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences, 90 Yale L.J. 1353, 1355, n.7 (1981), the defendants' position ignores the fact that "blame-shifting" in a negligence context actually has to do with the element of causation in fact. Once the defendant introduces evidence that another person's conduct fits this element, it has effectively shifted the blame to that person. Therefore, if the defendants' position were to be accepted, any defendant wishing to transfer blame to another person at trial could always maintain that it is not trying to show that the other's conduct satisfies the legal definition of negligence, but that it is merely trying to establish that the other person's conduct actually caused the injury.

---

[1]Prosser and Keeton define the troublesome concept of proximate causation as follows:

> Once it is established that the defendant's conduct has in fact been one of the causes of the plaintiff's injury, there remains the question whether the defendant should be held legally responsible for the injury. Unlike the fact of causation, with which it is often hopelessly confused, this is primarily a problem of law. It is sometimes said to depend on whether the conduct has been so significant and important a cause that the defendant should be legally responsible. But both significance and importance turn upon conclusions in legal policy, so that they depend essentially on whether the policy of the law will extend the responsibility for the conduct to the consequences that have in fact occurred ... The legal limitation on the scope of liability is [thus] associated with policy -- with our more or less inadequately expressed ideas of what justice demands, or of what is administratively possible and convenient.

Prosser and Keeton on Torts, § 42, 36 (5th ed. 1984) (Emphasis added.)

In the latter situation, however, the defendant has fully accomplished what Rule 8.03 was intended to prevent: it has effectively shifted the blame to another person without giving the plaintiff notice of its intent to do so. Therefore, the purpose of Rule 8.03 would be undermined to a substantial degree if the defendants' overly technical argument were to prevail.

The concurring opinion -- which accepts the contention that proximate causation is required to establish "blame-shifting" -- disputes this conclusion. In so doing, it first cites the following language from Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79, 84 (Tenn. 1996): "[f]ailure of the defendant to identify other potential tortfeasors would preclude the attribution of fault against such persons and would result in the defendant being liable for all damages except those attributable to the fault of the plaintiff." The concurrence then reasons that because the defendant is liable for all damages not caused by the plaintiff if it does not plead under Rule 8.03, it will have sufficient incentive to identify other potential tortfeasors even if we accept the defendants' argument.

We readily acknowledge that the factfinder may not formally attribute fault to other persons at trial if the defendant does not identify them under Rule 8.03; thus, the defendant does have some incentive to plead under the rule. This, however, does not change the fact that if the position advocated by defendants and the concurrence were to prevail, then the defendant, by carefully limiting its evidence of another person's role in causing the injuries to the element causation in fact, could completely and effectively shift the blame to that person without affording the plaintiff any notice whatsoever of its intent. A defendant would still be justified in totally

9

surprising the plaintiff and foisting the blame on other persons, a result that violates the purpose of Rule 8.03.

One final argument advanced by the defendants remains to be addressed. They argue that the purpose of Rule 8.03 was not violated in this case because the plaintiff was clearly aware of the possibility that Dr. Daniell had caused the injury. The defendants point out that the plaintiff's counsel actually elicited the quoted testimony from Dr. Allen; they also contend that the plaintiff's counsel met with Dr. Daniell well before trial to discuss whether he should be included in the suit. The defendants conclude that, because the plaintiff knew all the facts regarding Dr. Daniell's involvement, and had the opportunity to include him in the suit but simply chose not to do so, their failure to raise comparative fault as an affirmative defense did not prejudice the plaintiff.

We decline to accept this "harmless error" argument. Rule 8.03 is a prophylactic rule of procedure that must be strictly adhered to if it is to achieve its purposes. It is designed to obviate the need for appellate courts to look into the record for actual prejudice each time a defendant introduces proof at trial of an unpleaded defense. To accept the defendants' argument on this point would invite evasion of a clearly-stated rule of procedure that is crucial to the equitable and efficient administration of a comparative fault system.

Because the defendants contravened Rule 8.03 by attempting to shift the blame to another person at trial without affirmatively pleading comparative fault, the judgment of the lower courts is hereby reversed, and the cause remanded for further

proceedings consistent with this opinion.

                                                                _____

                                                                FRANK F. DROWOTA III
                                                                JUSTICE

CONCUR:

Birch, C.J.,
Anderson,  White, J.

Reid, J. - Separate Concurring Opinion.

11