October 7, 1996

FOR PUBLICATION

IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

**FILED**

**October 7, 1996**

**Cecil W. Crowson
Appellate Court Clerk**

| | |
|---|---|
| ETHEL FAYE GEORGE, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| | ) Davidson Circuit |
| | ) |
| v. | ) Hon. Marietta M. Shipley, Judge |
| | ) |
| | ) No. 01-S01-9505-CV-00084 |
| | ) |
| CLYDE WAYNE ALEXANDER, M.D. | ) |
| AND PHILLIP R. JONES, M.D., | ) |
| | ) |
| Defendants-Appellees. | ) |

<u>**CONCURRING OPINION**</u>

I agree with the result reached by the majority. However, resolution of the important principles of comparative fault and rules of pleading and evidence presented in this case requires, in my view, a more precise articulation and analysis of the pleadings, the facts, and the legal issues. As an example, the statement of the issue decided in the majority's introductory paragraph - if the defendant wishes to introduce evidence that a person other than itself caused the plaintiff's injury - encompasses various situations controlled by different rules and cannot

be decided as stated.  Since the rules of substantive law, pleading and evidence are correlated, I can best state my views in an integrated opinion rather than in a commentary on the majority's opinion.

## INTRODUCTION

This medical malpractice case presents for review the decision of the Court of Appeals that evidence that the negligence of a non-party proximately caused the plaintiff's injuries was admissible under a plea of general denial.  This Court finds that such evidence is admissible only when the affirmative defense of comparative fault has been pled.

## THE CASE

The plaintiff, Ethel Faye George, was admitted to a hospital in Nashville in October 1989 for surgery to be performed by Dr. James Daniell, a gynecologist.  In preparation for the surgery, Ms. George was positioned on her side for the administration of a spinal anesthesia by the defendant Dr. Phillip R. Jones, an anesthesiologist.  When Dr. Jones inserted the needle into her lower back, the patient reported sharp pain in her right leg.  After several unsuccessful attempts to complete the procedure, each

accompanied by reports of pain, Dr. Jones requested the assistance of another anesthesiologist, the defendant Dr. Clyde Wayne Alexander.  Despite the patient's complaints of pain each time the needle was inserted, the procedure was accomplished by the defendants.

Under the direction of Dr. Daniell, surgical nurses placed the patient on her back with her legs supported by stirrups, a position known as a modified lithotomy position, where she remained during the surgery.

After the operation, the plaintiff experienced pain extending down her right leg and foot, and since that time, she has been significantly and permanently impaired. The proof shows that the plaintiff's condition was caused by severe damage to two nerve roots.

In October 1990, the plaintiff filed this suit for medical malpractice against the defendants, Jones and Alexander.  The plaintiff did not sue Dr. Daniell.

The complaint alleges that the defendants' administration of spinal anesthesia was below the applicable standard of care and was the proximate cause of the injuries sustained.  The complaint alleges specifically that "the

injuries to the plaintiff's right leg and foot were caused by trauma to nerve roots and structures by the defendants during the administration of spinal anesthesia."  The complaint further charges that "the injuries and damages sustained by the plaintiff were proximately caused by the negligence and fault" of the defendants.

The defendants filed answers to the complaint on December 5, 1990.  They admitted that they performed the procedure but denied that their performance was below the applicable standard of care exercised by professionals practicing in the specialty of anesthesiology in Nashville and similar communities and stated that they complied with that standard of care.  The defendants specifically denied the allegation that the plaintiff's injuries were caused by the procedure performed, and they specifically denied the allegation that the plaintiff's injuries were proximately caused by the manner in which they performed the procedure. In their answers, the defendants "reserve[d] the right to assert additional affirmative defenses as they may appear through discovery and further investigation."

The plaintiff propounded to the defendants an interrogatory eliciting their position on whether the plaintiff's injuries had been caused by persons other than

the defendants, to which the defendants responded that they had "no definitive opinion of the cause or causes of the plaintiff's complaints."

In October 1993, approximately one month before the case went to trial, the plaintiff took the deposition of Dr. Vaughan Allen, the neurosurgeon who had treated the plaintiff for the injuries sustained during the operation. In the course of the deposition, Dr. Allen explained that Ms. George had suffered injuries to two separate nerve roots, and that in his opinion there were two plausible explanations for the injuries: that an "injection injury" had occurred in the administration of the spinal anesthesia by the defendants; or that the injury had occurred as the result of improper positioning of the patient by Dr. Daniell during surgery. Dr. Allen also testified that it was "extremely unlikely" that the plaintiff's injuries were caused by the defendants, and that "the most likely diagnosis" would be that the injuries were caused during the surgery by Dr. Daniell.

Prior to trial, the defendants filed a notice of intent to introduce into evidence the deposition of Dr. Allen. The plaintiff responded by filing a motion to exclude the testimony, contending that the defendants were required to plead comparative fault as an affirmative defense before

presenting evidence that another person caused the injury.

On the first day of the trial, the plaintiff filed a second motion in limine, asking the court to exclude any testimony and prohibit any questioning with regard to any cause of the plaintiff's injuries other than the defendants' injection of the spinal anesthesia. In the second motion the plaintiff asserted that:

> As grounds for this motion plaintiff would show the Court that Defendants have not raised an alternative cause as an affirmative defense in their answers to either the original complaint or the amended complaint and have not set forth any alternative cause in their Rule 26 statement of expert testimony or in answer to interrogatory number eight of the interrogatories propounded on each defendant many months ago.

The trial court denied the motions to exclude Dr. Allen's deposition. No additional pleading was filed by any of the parties, and on November 8, 1993 the case went to trial on the plaintiff's amended complaint and the defendants' answers.

The jury found for the defendants, and the trial court entered judgment accordingly. The Court of Appeals found that the admission of Dr. Allen's testimony was not

error, and affirmed.

**ANALYSIS**

Even though the cause of action arose in October, 1989, this case had not been tried when the decision in McIntyre v. Balentine, 833 S.W.2d 52 (Tenn. 1992), was released on May 4, 1992. Consequently, the case became subject to the principles of comparative fault, id. at 58, which significantly altered the substantive and procedural rights of the parties. At that time, the statute of limitations had run on the plaintiff's claim against any other person, including Dr. Daniell. However, McIntyre gave the defendants a significant right not previously available, the right to "allege, as an affirmative defense, that a nonparty [had] caused or contributed to the injury," and thus avoid liability in whole or in part. Id. An amendment to Tenn. R. Civ. P. 8.03, also adopted prior to the trial of this case, defined the procedure for asserting that defense.

Rule 8.03, entitled ?Affirmative Defenses,? provides in pertinent part that, ?[i]n pleading to a preceding pleading, a party shall set forth affirmatively facts in short and plain terms relied upon to constitute . . . comparative fault (including the identity or

description of any other alleged tortfeasors). . . .?  The Advisory Commission explained the 1993 amendment as follows:

> "Comparative fault" is substituted for "contributory negligence" in light of <u>McIntyre v. Balentine</u>, 833 S.W.2d 52 (Tenn. 1992).  Note that the defendant must identify or describe other alleged tortfeasors who should share fault, or else the defendant normally would be barred from shifting blame to others at trial.

Tenn. R. Civ. P. 8.03 Advisory Commission Comments [1993].

Despite this change in the law, the defendants did not plead comparative fault and thus failed to identify or describe any "other alleged tortfeasors."  The Court stated in <u>Ridings v. Ralph M. Parsons Co.</u>, 914 S.W.2d 79, 84 (Tenn. 1996), that "[f]ailure of the defendant to identify other potential tortfeasors would preclude the attribution of fault against such persons and would result in the defendant being liable for all damages except those attributable to the fault of the plaintiff."  Consequently, in this case, the defendants were barred from "shifting blame to others at trial."[1]

---

[1]A defendant's pleading of comparative fault as an affirmative defense under Tenn. R. Civ. P. 8.03, triggers the plaintiff's limited opportunity under Tenn. Code Ann. § 20-1-119(a) (1994) to make any other alleged tortfeasor a party to the suit.  In <u>Ridings v. Ralph M. Parsons Co.</u>, 914 S.W.2d 79, 83-84 (Tenn. 1996), the Court explained the interplay between Tenn. R. Civ. P. 8.03 and Tenn. Code Ann. § 20-1-119:

The plaintiff argues that because Dr. Allen's deposition was offered for the sole purpose of "shifting the blame" for the plaintiff's injuries away from the defendants and onto Dr. Daniell, the deposition was not admissible. In response, the defendants contend that they did not offer Dr. Allen's deposition to show that Dr. Daniell was "legally at fault" but to disprove an element of the plaintiff's _prima_ _facie_ case, causation in fact, and that, therefore, Rule 8.03 does not apply.

The admissibility of Dr. Allen's testimony depends upon its relevance to the issues raised by the pleadings. See Tenn. R. Evid. 402. The complaint charges professional

---

Rule 8.03, Tenn. R. Civ. P., insures that the rights and liabilities of the parties subject to suit be resolved in one action. Section 20-1-119 provides the procedure for joining additional defendants, but it does not address the effect of a defendant's failure to allege that a nonparty caused or contributed to the plaintiff's damages or the plaintiff's failure to make those persons defendants. However, Rule 8.03 requires that "comparative fault (including the identity or description of any other alleged tortfeasors)" be pled as an affirmative defense. Failure of the defendant to identify other potential tortfeasors would preclude the attribution of fault against such persons and would result in the defendant being liable for all damages except those attributable to the fault of the plaintiff. Failure of the plaintiff to assert its cause of action against such persons who are alleged by the defendant pursuant to Section 20-1-119 to have caused or contributed to the injury or damage, would not preclude the assessment of fault against such persons but would preclude the award of damages against such persons.

Since the defendants in the present case did not allege that Dr. Daniell, or another person, caused or contributed to the plaintiff's injuries, the issue of whether the plaintiff could have joined any third party defendants pursuant to § 20-1-119 is not presented in this case. See Owens v. Truckstops of America, 915 S.W.2d 420, 427 (Tenn. 1996).

-9-

malpractice. The defendants do not deny two of the essential elements of a cause of action based on negligence - duty of care and injury. See McClenahan v. Cooley, 806 S.W.2d 767, 774 (Tenn. 1991). The denials stated in the answer put at issue the other three essential elements - breach of duty, causation in fact, and proximate or legal causation. In other words, the defendants denied that they were negligent, that their administration of the medical procedure was below the applicable standard of care; they denied that the procedure was an antecedent cause of the plaintiff's injuries; and they denied that the procedure performed by them was the proximate or legal cause of the plaintiff's injuries. Their pleadings do not charge that the proximate cause of the plaintiff's injuries were the acts or omissions of other persons.

Evidence relevant to any of the legal issues raised by the pleadings was admissible. Rule 401, Tennessee Rules of Evidence, defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Consequently, Dr. Allen's testimony was admissible if it tends to establish the degree of care exercised by the defendants or the causal relationship, if

any, between the procedure performed by the defendants and the plaintiff's injuries.  The question, then, is - what does Dr. Allen's testimony tend to establish?

Dr. Allen's testimony related to two alternative (not common or joint) causes - the administration of the spinal anesthesia by the defendants and the positioning of the patient's body for surgery by Dr. Daniell.  As to the first, Dr. Allen testified that injury to two nerves could not have been caused by the injection of anesthesia unless the plaintiff had a ?conjoined nerve root? -- a rare anatomical condition in which two nerves are enclosed in a single protective sheath.  Dr. Allen discounted this possibility, based on his analysis of a myelogram and an MRI scan.  He concluded that although theoretically the plaintiff's injuries could have been caused by the spinal anesthesia, it was highly unlikely.

With regard to the other possible cause, Dr. Allen testified that the proper positioning of a patient's body during the described surgery is crucial, and that ensuring that the patient is properly positioned is primarily the responsibility of the surgeon performing the operation.  Dr. Allen testified that having the patient's body in an improper position during surgery could cause a ?stretch injury? to the

nerves and, conversely, that a stretch injury is highly unlikely if the patient is positioned correctly.  With regard to this point, Dr. Allen testified as follows:

> Q: Doctor, do you have an opinion within a reasonable degree of medical certainty that improper positioning of Ms. George for this surgery she had was the cause of her nerve damage to her leg?
>
> A: In my opinion that would be the most plausible cause, yes, sir.
>
> Q: So that would be your opinion within a reasonable degree of medical certainty?
>
> A: Yes, it would.
>
> Q: And it is your -- do you have an opinion within a reasonable degree of medical certainty, doctor, that improper positioning of the patient would not occur, normally not occur if the patient was positioned within the standard of care for the physicians involved?
>
> A: Yes.  As I have testified before, unless there was some underlying anatomic reason which I don't believe Ms. George has, that would be an accurate statement as well.

(Emphasis added).

Later in the deposition, Dr. Allen responded to a question about the lithotomy position:

> Q: Doctor, assuming someone is properly

-12-

positioned in the lithotomy position
. . ., do you have an opinion within a
reasonable degree of medical certainty
that that person, if they were properly
positioned in a lithotomy position,
would have an injury such as Ms. George
has?

A: It would be profoundly unlikely that
with proper positioning that one would
end up with a nerve injury.

Q: So would you have an opinion within a
reasonable degree of medical certainty
that -- if, as you opine, this was
caused by a stretch injury, would you
have an opinion within a reasonable
degree of medical certainty that there
was improper positioning?

A: Either improper positioning initially
or as the case went on stretch injury
from involving improper positioning such
as pushing against her legs or something
of that nature, but my answer would be
yes.

(Emphasis added).


This testimony tends to establish two conclusions – that the administration of the spinal anesthesia was not the cause in fact of the plaintiff's injuries, and that the positioning of the plaintiff's body by Dr. Daniell for surgery was the cause in fact of the plaintiff's injuries. Consequently, Dr. Allen's testimony regarding the defendants' administration of the procedure was relevant, and, therefore, admissible. However, his testimony regarding the positioning of the plaintiff's body for surgery was not relevant to any

-13-

issue made by the pleadings, and, therefore, was not admissible. His testimony with regard to positioning would have been relevant, and, therefore, admissible, if the defendants had pled the affirmative defense of comparative fault.

Rule 8.03 requires that the defendant identify or describe other alleged <u>tortfeasors</u>. It is applicable where a defendant undertakes to shift the "blame" to other "tortfeasors" who "should share fault." Tenn. R. Civ. P. 8.03 Advisory Commission Comments [1993]. Such allegations raise the issue of proximate cause. In <u>Kilpatrick v. Bryant</u>, 868 S.W.2d 594 (Tenn. 1993), the Court explained the difference between proximate cause and cause in fact:

> "Causation (or cause in fact) is a very different concept from that of proximate cause. Causation refers to the cause and effect relationship between the tortious conduct and the injury. The doctrine of proximate cause encompasses the whole panoply of rules that may deny liability for otherwise actionable causes of harm." Thus, proximate cause, or legal cause, concerns a determination of whether legal liability should be imposed where cause in fact has been established.

<u>Id.</u> at 598 (quoting Joseph H. King, Jr., <u>Causation, Valuation and Chance in Personal Injury Torts Involving Preexisting</u>

Conditions and Future Consequences, 90 Yale L.J. l353, l355

NSF. 7 (1981)).  Therefore, Rule 8.03 is applicable where the

defendant contends that the act or omission of another was

the proximate cause of the plaintiff's injury.


This reading of Rule 8.03 is consistent with Tenn.

Code Ann. § 20-1-119(e), which provides:


> This section shall not limit the right
> of any defendant to allege in an answer
> or amended answer that a person not a
> party to the suit caused or contributed
> to the injury for which the plaintiff
> seeks recovery.


Section 20-1-119 provides for the practical implementation of

the benefits of comparative fault, which requires special

pleading, and it also protects the defendants' right to

dispute all the essentials of liability under a plea of

general denial.  Under a plea of general denial, and without

affirmatively pleading comparative fault, the defendants are

entitled to show at trial that the act or omission of another

was the cause in fact (as distinguished from proximate cause)

of the plaintiff's injury.  However, without pleading

affirmatively, the defendants cannot attempt to shift the

"fault," "blame," or "liability" to the other person.  In

order for the defendants to shift all or part of the fault,

the defendants must affirmatively plead the negligence of

another, or in other words, identify or describe other tortfeasors who might be found to have proximately caused the plaintiff's injuries.  See Ridings v. Ralph M. Parsons Co., 914 S.W.2d at 83-84.

The defendants' argument on this point (and the majority opinion) ignores the relationship between pleading and evidence.  They acknowledge in their brief that Dr. Allen testified "that the surgical position of the patient was negligent and that the surgeon himself deviated from the standard of care."  They continue:  "But this was not the theory of the defendants; the defendants never, at any time, contended that the surgeon was negligent."  This argument defeats the defendants' case.  The "theory" or "contention" of the parties is found in the pleadings.[2]  Under modern pleading, a party is not required to set out in detail the facts upon which it bases its claim or defense; however, the pleadings must afford fair notice of what the claim or defense is and the grounds upon which it rests.  See 2A James W. Moore, et al., Moore's Federal Practice ¶8.02 (2d ed. 1995) (citing Conley v. Gibson, 78 S. Ct. 99, 355 U.S. 41, 47-48, 2 L.Ed.2d 80 (1957)).  An affirmative defense pleads a matter that is not within the plaintiff's prima facie case. Id. at¶8.27[1].  Thus, pleadings give notice of the issues to

---

[2]Tenn. R. Civ. P. 8; Hammett v. Vogue, Inc., 179 Tenn. 284, 165 S.W.2d 577, 579 (1942).

be tried.  Castelli v. Lien, 910 S.W.2d 420, 429 (Tenn. Ct. App. 1995).

The defendants' pleadings do not allege that Dr. Daniell was negligent or that his negligence was a contributing cause of the plaintiff's injuries.  However, their evidence, the testimony of Dr. Allen, tends to establish that Dr. Daniell was negligent and that his negligence caused the plaintiff's injuries.  That evidence tends to establish Dr. Daniell as a tortfeasor, at fault and responsible for the plaintiff's injuries.  It also is an invitation to the jury to shift the fault to persons other than the defendants.  The conclusion, of course, is that since the defendants did not plead comparative fault and identify other tortfeasors, that portion of Dr. Allen's testimony which tends to shift the fault to Dr. Daniell was not admissible.

Relevant evidence of causation which does not tend to establish nonparties as tortfeasors is admissible under a general denial.  However, a defendant's evidence which, as in this case, tends to show no causation in fact by the defendant is inadmissible if it also shows that a nonparty was negligent and that the nonparty's negligence was the proximate cause of the plaintiff's damages.  In the present

case, the defendants relied heavily upon Dr. Allen's testimony that the patient was improperly positioned for surgery and that improper positioning was the cause of the injuries. Rule 8.03 requires that if those facts are to be relied upon, they must be set forth in the pleadings in "short and plain terms." Otherwise, testimony regarding those facts is not admissible.

The argument that comparative fault never would be pled overlooks the above stated rule of evidence as well as significant practical factors. In Tennessee, where the separate, independent negligent acts of more than one tortfeasor have combined to cause a single, indivisible injury, liability is not joint and several.[3] Consequently, where the defendant does not plead comparative fault, it will be held liable for 100 percent of the plaintiff's damages unless it is absolved of all liability. In other words, where a sole defendant does not plead comparative fault, there will be no apportioning of liability for damages even though the defendant may have been only partially at fault. Evidence which tends to establish the plaintiff or a non-party as a tortfeasor responsible for the damages alleged is not admissible unless the defendant has pled comparative fault as an affirmative defense.

---

[3]Owens v. Truckstops, 915 S.W.2d 420, 428 (Tenn. 1996).

Admission of a portion of Dr. Allen's testimony was prejudicial error requiring the decision of the Court of Appeals to be reversed and the case remanded for a new trial.

_____
Reid, J.