# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
March 5, 1999 Session

## JAMES A. HODGE v. JONES HOLDING COMPANY, INC.

**Appeal from the Circuit Court for Lincoln County**
**No. C9600214     F. Lee Russell, Judge**

---

**No. M1998-00955-COA-R3-CV - Filed August 3, 2001**

---

This appeal involves a motorcycle rider who was seriously injured when his motorcycle crossed metal plates covering a portion of the highway surface that was under construction. After voluntarily dismissing his first suit, the rider filed a second suit in the Circuit Court for Lincoln County against the corporation he believed to be responsible for placing the metal plates across the highway. The rider insisted on proceeding against this corporation even after he was informed that he had sued the wrong party. The corporation moved for a directed verdict at the close of the motorcycle rider's case-in-chief, asserting that he had failed to prove that it was responsible for the road construction. The trial court granted the motion and dismissed the rider's complaint. The rider now challenges the directed verdict on two grounds. First, he asserts that he presented enough evidence of the contractor's responsibility for the construction to take the case to the jury. Second, he asserts that the corporation should not be permitted to argue that he sued the wrong party because it had not specifically identified or described this party in its answer as required by Tenn. R. Civ. P. 8.03. We have determined that the corporation's denial of involvement with the construction project at issue was not asserting an affirmative defense governed by Tenn. R. Civ. P. 8.03 and that the trial court properly granted the directed verdict. Therefore, we affirm the judgment dismissing the motorcycle rider's complaint.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

August C. Winter, Brentwood, Tennessee (on appeal), for the appellant, James A. Hodge.

William B. Jakes, III, Nashville, Tennessee, for the appellee, Jones Holding Company, Inc.

## OPINION

### I.

On August 1, 1993, James Hodge drove his motorcycle to Waynesboro to visit a son who was incarcerated at a correctional "boot camp" there. He was joined there by another son, John Hodge. At approximately 5:00 p.m., James Hodge and John Hodge left Waynesboro for their home in

Sewanee. James Hodge was riding his motorcycle; while John Hodge was driving ahead of him in his automobile.

As the Hodges were driving east on U.S. Highway 64, they encountered road construction in the western portion of Lincoln County. At one spot on a downhill curve, the contractor had placed three one-inch thick rectangular steel plates over the pavement. While the plates were fastened together with welded straps, there was a seam between the plates running parallel to the direction of the traffic. John Hodge saw the construction warning signs and the steel plates. After breaking appropriately, he drove across the steel plates without incident. After he crossed the steel plates, John Hodge looked in his rearview mirror to see if his father had crossed the plates safely. When he first looked, he saw his father approaching the seam between the plates. He also saw his father's motorcycle "lower" and then he saw his father "coming out of the groove." When John Hodge looked again, he saw his father "off the side of the road, dust was flying up and I saw him go over the front of his motorcycle and his helmet hit the fairing, the fairing broke and then he wound up 20 foot past his motorcycle in some very large rocks."

James Hodge was rushed to Lincoln Regional Hospital and then airlifted to Erlanger Medical Center in Chattanooga where he remained hospitalized for more than one month. He sustained a closed head injury that affected his ability to speak and walk. Following the wreck, John Hodge attempted suicide and was admitted to a psychiatric institution for a time. He attributed his distraught state of mind to the fact that he had witnessed his father's motorcycle wreck.

James Hodge and John Hodge filed suit in the Circuit Court for Lincoln County against Jones Brothers Construction Company. James Hodge sought $1,000,000 in compensatory damages and $1,000,000 in punitive damages for his injuries, and John Hodge sought $250,000 in compensatory and $250,000 in punitive damages for the emotional injury he sustained by watching his father's wreck. In April 1995, the trial court granted Jones Brothers Construction Company's motion for partial summary judgment and dismissed John Hodge's claims.[1] James Hodge later voluntarily dismissed his claims against Jones Brothers Construction Company.

Both James Hodge and John Hodge filed a second complaint on December 6, 1996. Instead of suing the original defendant, Jones Brothers Construction Company, they sued "Jones Holding, Inc., Company" ("Jones Holding, Inc.") and alleged that Jones Holding, Inc. was "formerly known as Jones Brothers Construction Company." In its answer filed on January 6, 1997, Jones Holding, Inc. denied that it was formerly known as Jones Brothers Construction Company and denied that it had been involved in any construction on U.S. Highway 64. On January 17, 1997, the lawyer representing Jones Holding, Inc. sent a letter to the lawyer representing the Hodges in an effort "to try and straighten out the confusion as to the identity of the proper defendant in this case." This letter explained that

> Jones Bros. Construction Company was formed several years ago for
> Robert Jones' personal business. There have never been any
> employees of this entity other than Mr. Jones himself. This company

---

[1]The trial court entered another order in May 1995 correcting a misnomer in its April 1995 order. John Hodge did not appeal from either of these orders.

> files a non-consolidated tax return based on its own, albeit limited, activity.
>
> To avoid confusion with Jones Bros., Inc. (which is a construction company and the proper defendant in this case), the name of Jones Bros. Construction Company was changed in 1995 to Jones Holding, Inc. Jones Holding, Inc. does not have a contractors license and has no ties with the business activities of Jones Bros., Inc. but does have the one shareholder in common, Robert Jones. All construction activity (including the job which is the subject of this case) is contracted with the entity Jones Bros., Inc. I would appreciate it if you would sign the enclosed Agreed Order and submit it to the court. I assure you that this will not affect any applicable insurance coverage.

Attached to this letter was an agreed order, signed by Jones Holding, Inc.'s counsel, amending the complaint to correct the name of the proper party defendant to read "Jones Bros., Inc." For some reason, not readily apparent in the record, the Hodges' lawyer neither acknowledged this letter nor forwarded the agreed order to the trial court for entry. Thus, the suit proceeded against Jones Holding, Inc.

The trial on James Hodge's claims commenced in November 1997.[2] Mr. Hodge called only three witnesses, John Hodge, a custodian of Erlanger Medical Center's patient records, and an employee of the Department of Transportation who testified that "Jones Brothers" was responsible for placing the steel plates across the highway.[3] After Mr. Hodge rested his case, Jones Holding, Inc. moved successfully for a directed verdict on two grounds. First, it asserted that Mr. Hodge had sued the wrong defendant and had presented no evidence that Jones Holding, Inc. had been negligent. Second, it asserted that Mr. Hodge had failed to present evidence "that there's any negligence on the part of whoever the right defendant might be." The trial court granted the motion on both grounds and later denied Mr. Hodge's motion for new trial. This appeal ensued.

## II.
### THE STANDARD OF REVIEW

Directed verdicts under either Tenn. R. Civ. P. 50.01 or 50.02 are appropriate only when reasonable minds cannot differ as to the conclusions to be drawn from the evidence. *Alexander v. Armentrout*, 24 S.W.3d 267, 271 (Tenn. 2000); *Eaton v. McClain*, 891 S.W.2d 587, 590 (Tenn. 1994); *Ingram v. Earthman*, 993 S.W.2d 611, 627 (Tenn. Ct. App. 1998). A case should not be taken away from the jury, even when the facts are undisputed, if reasonable persons could draw different conclusions from the facts. *Gulf, M. & O.R. Co. v. Underwood*, 182 Tenn. 467, 474, 187

---

[2] The trial court had earlier dismissed John Hodge's claims on res judicata grounds. John Hodge has not appealed from that decision.

[3] Mr. Hodge was unable to present expert medical proof regarding his injuries because he had failed to comply with an agreed scheduling order. He did not take the stand because the trial court had denied his motion in limine seeking to prevent Jones Holding, Inc. from cross-examining him regarding his recent drug-related criminal convictions.

S.W.2d 777, 779 (1945); *Hurley v. Tennessee Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 891 (Tenn. Ct. App. 1995). A trial court may, however, direct a verdict with regard to an issue that can properly be decided as a question of law because deciding purely legal questions is the court's responsibility, not the jury's.

In appeals from a directed verdict, the reviewing courts do not weigh the evidence, *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995); *Benton v. Snyder*, 825 S.W.2d 409, 413 (Tenn. 1992), or evaluate the credibility of the witnesses. *Benson v. Tennessee Valley Elec. Coop.*, 868 S.W.2d 630, 638-39 (Tenn. Ct. App. 1993). Instead, they review the evidence in the light most favorable to the motion's opponent, give the motion's opponent the benefit of all reasonable inferences, and disregard all evidence contrary to that party's position. *Alexander v. Armentrout*, 24 S.W.3d at 271; *Eaton v. McClain*, 891 S.W.2d at 590; *Spann v. Abraham*, 36 S.W.3d 452, 462 (Tenn. Ct. App. 1999). A Tenn. R. Civ. P. 50.01 motion for directed verdict should not be granted if the evidence is sufficient to create an issue for the jury to decide. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 231 (Tenn. Ct. App. 1999); *Norman v. Liberty Life Assurance Co.*, 556 S.W.2d 772, 773 (Tenn. Ct. App. 1977).

### III.
### THE EVIDENCE AGAINST JONES HOLDING, INC.

Mr. Hodge first argues that the trial court erred by granting the directed verdict because he had presented evidence from which the jury could conclude that Jones Holding, Inc. was responsible for placing in the roadway the steel plates that caused his injuries. Jones Holding, Inc. responds that a witness's single reference to "Jones Brothers" provided an insufficient factual basis for concluding that it played any role in the construction project on U.S. Highway 64. We agree.

When Mr. Hodge filed his second suit, he intentionally chose to sue Jones Holding, Inc. Thus, to get his case to the jury, Mr. Hodge had the burden of establishing all the essential elements of his case. *Waste Conversion Sys., Inc. v. Greenstone Indus., Inc.*, 33 S.W.3d 779, 783 (Tenn. 2000); *Winford v. Hawissee Apartment Complex*, 812 S.W.2d 293, 295 (Tenn. Ct. App. 1991). One of these essential elements was that Jones Holding, Inc. was the construction company responsible for placing the steel plates across U.S. Highway 64.

The only evidence regarding the identity of the construction company responsible for placing the steel plates across the highway consisted of the answer to one question put to an inspector employed by the Tennessee Department of Transportation. When he was asked during his direct examination to identify who placed the steel plates in the road, the inspector answered "Jones Brothers." Later, when asked on cross-examination if he had ever heard of a company called Jones Holding Company, the inspector answered "No, I haven't."

While Mr. Hodge is entitled to the benefit of all reasonable inferences from the evidence, we concur with the trial court's decision that it would be unreasonable to infer that Jones Holding, Inc. was responsible for placing the steel plates in the road from the testimony identifying "Jones Brothers" as the responsible party. Corporations are discrete legal entities, and similarities in the names of two corporations do not provide a basis for attributing the acts of one corporation to the other. *State v. Yamada & Sons, Inc.*, 584 P.2d 114, 116 (Haw. 1978) (holding that the fact that two

corporations bear the same name "is no more the occasion for attributing the debts of one to the other than if they were two individuals"). In the final analysis, Mr. Hodge sued the wrong corporation. No amount of evidence can cure this mistake.

## IV.
### JONES HOLDING, INC.'S OBLIGATION UNDER TENN. R. CIV. P. 8.03

Mr. Hodge also argues that Jones Holding, Inc. was not entitled to a directed verdict based on his misidentification of the construction company responsible for placing the steel plates across the highway because it did not specifically identify Jones Bros., Inc. as a potential tortfeasor in its answer. In essence, Mr. Hodge complains that he was bushwhacked at trial by an "unpled affirmative defense." We disagree for two reasons. First, Jones Holding, Inc.'s argument that Mr. Hodge had sued the wrong corporation was not an affirmative defense governed by Tenn. R. Civ. P. 8.03. Second, Mr. Hodge was put on notice ten months before trial that he had sued the wrong defendant.

There are substantial differences between general defenses governed by Tenn. R. Civ. P. 8.02 and affirmative defenses governed by Tenn. R. Civ. P. 8.03. A general defense directly controverts or negates one or more element of the plaintiff's case. *Donohoe v. American Isuzu Motors, Inc.*, 155 F.R.D. 515, 518 (M.D. Pa. 1994); *Winford v. Hawissee Apartment Complex*, 812 S.W.2d at 295. In other words, it attacks the sufficiency of the plaintiff's claim.

On the other hand, an affirmative defense governed by Tenn. R. Civ. P. 8.03 does not tend to controvert an element of the plaintiff's case. *George v. Alexander*, 931 S.W.2d 517, 527 (Tenn. 1996) (Reid, J., concurring) (stating that an affirmative defense pleads a matter that is not within the plaintiff's prima facie case). It is a lineal descendant of the common-law plea of confession and avoidance which permitted a defendant who was willing to admit that the plaintiff's declaration demonstrated a prima facie case to then go on and allege additional new material that would defeat the plaintiff's otherwise valid cause of action. 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1270, at 411 (2d ed. 1990)*; Thompson, Breeding, Dunn, Creswell & Sparks v. Bowlin*, 765 S.W.2d 743, 744 (Tenn. Ct. App. 1987) (stating that an affirmative defense admits all or part of the cause of action).

An affirmative defense raises new matters not covered by the plaintiff's complaint which will defeat the plaintiff's claim on the merits, even if the plaintiff proves all of the allegations in its complaint. An affirmative defense generally relies on facts that are not necessary to support the plaintiff's case. *Bond v. Cedar Rapids Television Co.*, 518 N.W.2d 352, 355 (Iowa 1994). Thus, a defendant asserting an affirmative defense may introduce evidence to establish an independent reason why the plaintiff should be denied recovery. *Russell v. City of Bryan*, 919 S.W.2d 698, 704 (Tex. App. 1996). Defendants desiring to assert an affirmative defense must specifically plead the defense in their answer. Tenn. R. Civ. P. 12.08. If they fail to do so, they will be deemed to have waived the defense. *Reed v. Alamo Rent-A-Car, Inc.*, 4 S.W.3d 677, 690-91 (Tenn. Ct. App. 1999); *Steed Realty v. Oveisi*, 823 S.W.2d 195, 197 (Tenn. Ct. App. 1991).

Tenn. R. Civ. P. 8.03 specifically identifies seventeen defenses as affirmative defenses. One of these defenses is the defense of "comparative fault (including the identity or description of any other alleged tortfeasors)." Following the 1993 amendment that added this defense to Tenn. R. Civ. P. 8.03, a defendant in a negligence action desiring to introduce evidence that a third party caused or contributed to the plaintiff's injuries must affirmatively plead comparative fault as a defense, *George v. Alexander*, 931 S.W.2d at 520, and must identify or describe the other alleged tortfeasors who should share fault. Tenn. R. Civ. P. 8.03 advisory comm'n cmt. to 1993 amend.

Jones Holding, Inc. was not asserting the comparative fault affirmative defense in this case. Rather than seeking to lay off all or a part of the fault for Mr. Hodge's injuries on another tortfeasor, it was simply asserting that it was not the construction company responsible for the road construction where Mr. Hodge was injured. Thus, Jones Holding, Inc. was directly controverting or negating two of the allegations in Mr. Hodge's complaint – that it was "engaged in road and other types of construction" and that it was "engaged in the construction of a road in western Lincoln County" during the summer of 1993. This general defense could permissibly be raised simply by denying the corresponding allegations in Mr. Hodge's complaint.

Mr. Hodge's protestations of surprise regarding Jones Holding, Inc.'s denial that it was responsible for the construction project on U.S. Highway 64 are somewhat disingenuous. One month after he filed his second complaint, Jones Holding, Inc. filed its answer flatly denying (1) that it was engaged in road and other types of construction, (2) that it was formerly known as Jones Brothers Construction Company, and (3) that it was engaged in the construction of a road in western Lincoln County in the summer of 1993. While these denials should have alerted Mr. Hodge to the possibility that he had sued the wrong corporation, all doubt should have vanished when Mr. Hodge's lawyer received the January 17, 1997 letter from Jones Holding, Inc.'s lawyer informing him that Mr. Hodge had sued the wrong corporation. Thus, Mr. Hodge was aware of the misidentification problem for ten months prior to trial.

The puzzling part of this case is Mr. Hodge's failure to remedy the misidentification problem when it was brought to his attention. The reasons why his lawyer declined the offer to enter an agreed order amending the complaint to cure the problem are not reflected in the record and are not otherwise readily apparent. What is apparent is that Mr. Hodge failed to seize the opportunity to remedy the error in his complaint that later proved to be his undoing at trial. We cannot fault the trial court for directing a verdict in Jones Holding, Inc.'s favor when Mr. Hodge's tactical oversight finally caught up with him at trial.

## V.

We affirm the judgment directing a verdict in favor of Jones Holding, Inc. and remand the case to the trial court for whatever further proceedings consistent with this opinion may be required. We tax the costs of this appeal to James A. Hodge and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

-6-