IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 21, 2004 Session

## MECHELLE E. ELOSIEBO v. STATE OF TENNESSEE

**Direct Appeal from the Tennessee Claims Commission, Eastern Grand Division**
**No. 202000293     Hon. Vance W. Cheek, Jr., Commissioner**

**No. E2003-02941-COA-R3-CV -  FILED NOVEMBER 29, 2004**

The Commissioner found defendant's physician breached the standard of care in the treatment of plaintiff, but refused to award damages.  On appeal, we affirm Commissioner's finding of breach, but award damages and remand to enter Judgment.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Claims Commission Affirmed in Part, Reversed in Part, Award Damages and Remand.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and GARY R. WADE, P.J., Sp.J., joined.

Richard L. Duncan and Cary L. Bauer, Knoxville, Tennessee, for Appellant.

Ronald C. Leadbetter, Knoxville, Tennessee, for Appellee.

### OPINION

In this action, plaintiff, a student at the University of Tennessee, alleges she was a victim of medical malpractice at the University of Tennessee Student Health Clinic.  She alleges she visited the clinic on August 23, 2000, after returning from a trip to Nigeria, and presented symptoms including headache, back pain, fever, and abdominal cramps.  Plaintiff alleges that she was diagnosed with acute viremia, prescribed fluids, and told to return the next day for follow up, and that she returned to the clinic the next morning, and was given an IV and fluids, but was never tested for malaria.  She alleged that Dr. Robert L. Rubright and the clinic violated the standard of care by failing to test for and rule out malaria.  She further alleged she suffered injuries as a result of the misdiagnosis including coma, brain injury, renal failure, liver failure, medical expenses, pain and

suffering, and loss of earning capacity.

Defendant answered, admitting that Dr. Rubright was an employee of the State, but denied that plaintiff's damages were caused by defendant.

In a trial before the Commissioner, Dr. Arthur Williamson testified as an expert witness, stating that he was familiar with the standard of care for family practitioners in Knoxville and similar communities for the relevant time frame, and opined that it was not reasonable to diagnose plaintiff with a virus, and fail to rule out malaria. He testified that he had never before testified that a physician had breached the standard of care, but after reviewing the records he felt compelled to do so in this case.

Next, Dr. William Schaffner testified to his credentials, including his subspecialty of infectious diseases within the specialty of internal medicine. He testified that he was familiar with the standard of care applicable to family practitioners in East Tennessee, that he was involved at the student health clinic at Vanderbilt, and had treated cases of malaria. After viewing plaintiff's clinic records for August 23, he testified that plaintiff's symptoms coupled with the fact noted that she had just returned from Nigeria would suggest that malaria should be considered and ruled out.

Dr. Rubright testified that he practiced at the U.T. Student Health Clinic from 1970 to 1988, and was team physician for the men's athletics program from 1988 to 1993. He testified that after 1993, he worked at the clinic when they were short-handed, and averaged working 30-40 days per year. He testified that he knew in 2000 that malaria was the #1 killer in the world, especially falciparum, and that it could kill someone in a short time, and he also knew that West Africa was one of the highest risk areas for malaria. He further testified that plaintiff's symptoms were consistent with malaria, as well as lots of other illnesses. He also knew in 2000 that malaria had a very non-specific presentation/symptoms.

He testified when plaintiff left the clinic on Thursday, she still had a fever, and when she returned on Friday, she was acutely ill, was lethargic, and "out of it". He did a urinalysis on plaintiff which indicated that she was having kidney problems, so he decided she needed to go to the hospital.

Plaintiff was admitted to the University of Tennessee Medical Center, where a pathologist initially diagnosed the wrong type of malaria, and when she did not improve from the prescribed treatment, her chart was rechecked and she was diagnosed with falciparum malaria. The evidence shows that she lapsed into a coma and was unresponsive and moaning, with no attempt at speech. She was in a cerebral malaria coma for 10 or 11 days, received an infusion of two units of packed blood cells secondary to malaria, and kidney dialysis. She remained in the ICU from August 31 to September 7, and developed pneumonia while in the hospital. She suffered acute renal failure which required an invasive catheter, and she testified that when she awoke from the coma, she had tubes in her legs, tubes up her nose, tubes in her chest, and was tied down so she wouldn't remove the tubes. As a result, plaintiff's muscles atrophied and she needed constant care. After being

discharged to home, she spent two to three weeks in bed, and dropped out of school for one semester and graduated later than her entering class. The cost of her hospitalization was $106,841.81.

Following the trial, the Commissioner made findings of fact and conclusions of law. In his findings and conclusions, he stated that he believed Dr. Rubright had "three huge red flags that scream test for malaria" and he failed to do so, and found that Dr. Rubright violated the standard of care, because he felt any reasonable practitioner would have ordered the undisputedly simple blood smear test just to rule out malaria. The Commissioner also found that he had "no evidence . . . as to what the damages were for . . . two days" because Dr. Rubright's failure to test caused a 48 hour delay in the diagnosis. The Commissioner stated that the hospital's misdiagnosis was an independent intervening circumstance which was the proximate cause of all of plaintiff's injuries. He found that he could not "find a quantified set of damages for the breach of standard of care for that forty-eight-hour period." Plaintiff appealed, and charges the Commissioner erred in awarding no damages after finding there was a deviation from the standard of care.

Plaintiff first argues that the Commissioner erred in finding that plaintiff's misdiagnosis at U.T. Hospital was an independent intervening circumstance which proximately caused plaintiff's injuries.

Regarding intervening cause, this Court has previously explained:

The intervening cause doctrine is a common-law liability shifting device. It provides that a negligent actor will be relieved from liability when a new, independent and unforseen cause intervenes to produce a result that could not have been foreseen. The doctrine only applies when (1) the intervening act was sufficient by itself to cause the injury, (2) the intervening act was not reasonably foreseeable by the negligent actor, and (3) the intervening act was not a normal response to the original negligent actor's conduct. The customary explanation of the doctrine is that an independent, intervening cause breaks the chain of legal causation between the original actor's conduct and the eventual injury.

The separation of causation in fact from legal causation and the adoption of the comparative fault doctrine have obscured the role and significance of the intervening cause doctrine. Intervening cause appears to relate more to legal causation than to causation in fact because it does not come into play until after causation in fact has been established. The doctrine also appears to have survived the adoption of comparative fault even though other similar liability shifting doctrines such as last clear chance, implied assumption of the risk, and remote contributory negligence have been subsumed into comparative fault. While other jurisdictions have concluded otherwise, the Supreme Court has stated that proximate cause and intervening cause remain jury questions in the comparative fault decision-making process.

-3-

*Waste Management, Inc. of Tennessee v. South Central Bell Telephone Co.*, 15 S.W.3d 425, 432 (Tenn. Ct. App. 1997)(citations omitted). As this case notes, intervening cause relates to proximate or legal causation, and thus is a question of fact which this Court must review *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Intervening cause requires a showing of the above listed three elements.

The first element is that the intervening act must have been sufficient by itself to cause the injury. The expert proof in this case was that if plaintiff had been properly diagnosed when entering U.T. Hospital and treated appropriately, her condition would probably not have worsened, which was admitted by plaintiff's expert.

Thus, the misdiagnosis which occurred at the hospital as to the particular type of malaria could have been sufficient itself to cause injury. The other elements required, however, cannot be established. The hospital's misdiagnosis as to the type of malaria was both normal and foreseeable, as those items are defined in this context.

As regarding foreseeability, the Supreme Court has explained as follows:

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted,...."

*Evridge v. American Honda Motor Co.*, 685 S.W.2d 632, 635 (Tenn. 1985), quoting Restatement (Second) of Torts §447.

In discussing what is foreseeable in terms of proximate causation, our Supreme Court has said:

The foreseeability requirement is not so strict as to require the tortfeasor to foresee the exact manner in which the injury takes place, provided it is determined that the tortfeasor could foresee, or through the exercise of reasonable diligence should have foreseen, the general manner in which the injury or loss occurred. "The fact that an accident may be freakish does not per se make it unpredictable or unforeseen." It is sufficient that harm in the abstract could reasonably be foreseen.

*McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991)(citations omitted). The Court went on

to explain:

> With respect to superseding intervening causes that might break the chain of proximate causation, the rule is established that it is not necessary that tortfeasors or concurrent forces act in concert, or that there be a joint operation or a union of act or intent, in order for the negligence of each to be regarded as the proximate cause of the injuries, thereby rendering all tortfeasors liable. There is no requirement that a cause, to be regarded as the proximate cause of an injury, be the sole cause, the last act, or the one nearest to the injury, provided it is a substantial factor in producing the end result. An intervening act, which is a normal response created by negligence, is not a superseding, intervening cause so as to relieve the original wrongdoer of liability, provided the intervening act could have reasonably been foreseen and the conduct was a substantial factor in bringing about the harm. "An intervening act will not exculpate the original wrongdoer unless it appears that the negligent intervening act could not have been reasonably anticipated."

*Id.* (citations omitted).

What is considered a foreseeable or normal consequence has been further explained in Restatement (Second) of Torts §447, wherein it is stated that a negligent intervening act is not a superseding cause of harm to another where the actor's negligent conduct is a substantial factor in bringing it about, if "the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent." Comment b expounds on what is meant by "normal consequence", and states:

> It, therefore, denotes that the court or jury looking at the matter after the event and knowing the situation which existed when the act was done, including the character of the person subjected to the stimulus of the situation, would not regard it as extraordinary that such act, though negligent, should have been done.

Comment b also refers to the definition provided for "normal" in §443, Comment b.

This rule has been followed in medical negligence cases as well. For example, the Supreme Court has stated:

> This Court, like most others, recognizes that if one is injured by the negligence of another, and these injuries are aggravated by medical treatment (either prudent or negligent), the negligence of the wrongdoer causing the original injury is regarded as the proximate cause of the damage subsequently flowing from the medical treatment.

*Transports, Inc. v. Perry*, 414 S.W.2d 1, 4 (Tenn. 1967), *see also Troy v. Herndon*, 1998 WL 820698 (Tenn. Ct. App. Nov. 24, 1998); *Atkinson v. Hemphill*, 1994 WL 456349 (Tenn. Ct. App. Aug. 24,

1994).

This rule has survived in the comparative fault scheme. *Troy* and *Atkinson*. While it has normally been applied in situations where the plaintiff was injured in an accident and then his injuries were aggravated by medical treatment, it equally applies where there are two separate instances of medical negligence.

For these reasons, the Commissioner's finding that the hospital's negligence in misdiagnosing the type of malaria was an intervening cause which cut off defendant's liability is in error, because the hospital's misdiagnosis was a normal and foreseeable consequence.

While the State urges us to hold that the misdiagnosis by the hospital was an intervening and proximate cause of plaintiff's injuries, the State's attorney stated in his closing argument "we don't suggest that any physician who was treating her at the Medical Center did anything wrong." He went on to state:

> To assess comparative fault would mean that the State would have to point a finger at one of the physicians and say you acted negligently or you acted outside the appropriate standard of care. Our whole point is that malaria is a difficult disease to diagnose, that's part of our defense.

Essentially, the State conceded that the hospital's misdiagnosis of the type of malaria was not extraordinary or unforeseeable. Dr. Rubright and the medical experts also conceded that the type of malaria could sometimes be misdiagnosed. The evidence preponderates against the Commissioner's finding of an intervening cause.

Moreover, the State did not plead comparative fault or intervening cause in its Answer with regard to the negligence of the hospital. Accordingly, the Commissioner should not have raised the issue *sua sponte* and determined it to be dispositive, when the hospital actors were not before him as defendants and the plaintiff had no notice that this issue would be raised. Pursuant to Tenn. R. Civ. P. 8, these issues are required to be pled as a defense, and as the Comments to the rule point out, "the defendant must identify or describe other alleged tortfeasors who should share fault, or else the defendant would normally be barred from shifting blame to others at trial." *See also, George v. Alexander*, 931 S.W.2d 517 (Tenn. 1996), where the Supreme Court said:

> We readily acknowledge that the factfinder may not formally attribute fault to other persons at trial if the defendant does not identify them under Rule 8.03; thus, the defendant does have some incentive to plead under the rule. This, however, does not change the fact that if the position advocated by defendants and the concurrence were to prevail, then the defendant, by carefully limiting its evidence of another person's role in causing the injuries to the element causation in fact, could completely and effectively shift the blame to that person without affording the plaintiff any notice whatsoever of its intent. A defendant would still be justified in totally surprising the

> plaintiff and foisting the blame on other persons, a result that violates the purpose of Rule 8.03.

*Id.* at 521. The commissioner was in error to attribute fault to the hospital's negligence.

The Trial Court found that Dr. Rubright violated the standard of care, which he basically conceded in his testimony, and the evidence does not preponderate against this finding, Tenn. R. App. P. 13(d). The issue thus becomes in our *de novo* review the extent of damages sustained as a result of Dr. Rubright's malpractice. The evidence established that had defendant timely diagnosed plaintiff's illness and administered proper treatment, that she would not have suffered the severe consequences which the delay in treatment caused.

The statutory limits on damages as provided in Tenn. Code Ann. § 9-8-307(a)(3)(e) is $300,000.00, and the evidence of damages as hereinbefore detailed, including her pain and suffering establishes damages well in excess of the statutory limits.

Accordingly, we remand to the Commissioner and direct that a Judgment of $300,000.00 be entered on behalf of the plaintiff against defendant.

The cost of the appeal is assessed to the State of Tennessee.

_____
HERSCHEL PICKENS FRANKS, P.J.

-7-