IN THE SUPREME COURT OF TENESSEE
AT NASHVILLE
October 5, 2022 Session

**ROBERT CROTTY, ET AL. v. MARK FLORA, M.D.**

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Davidson County**
**No. 17C614 Joe P. Binkley, Jr., Judge**

_____

**No. M2021-01193-SC-R11-CV**

_____

In this interlocutory appeal, the defendant physician in a health care liability action asks us to review two pretrial orders. In the first, the trial court excludes evidence that a nonparty physician was the cause-in-fact of the claimant's injuries because the defendant never amended his answer to include that allegation, as required under Rule 8.03 of the Tennessee Rules of Civil Procedure as applied in *George v. Alexander*, 931 S.W.2d 517 (Tenn. 1996). Because he does not allege that the nonparty physician was negligent, the defendant asks us to modify our holding in *George* and reverse the trial court's order. We respectfully decline to do so. In the second pretrial order on appeal, the trial court considered Tennessee Code Annotated section 29-26-119, a provision that partially abrogates the common law collateral source rule in health care liability actions. It held that section 29-26-119 does not abrogate the collateral source rule under the facts of this case. We agree with the trial court that the collateral source rule remains in effect in this case. We affirm both of the trial court's pretrial rulings.

**Tenn. R. App. P. 11 Appeal by Permission;**
**Judgment of the Trial Court Affirmed; Remanded to the Trial Court**

HOLLY KIRBY, J., delivered the opinion of the court, in which SHARON G. LEE, JEFFREY S. BIVINS, and SARAH K. CAMPBELL, JJ., joined. ROGER A. PAGE, C.J., filed an opinion concurring in part and dissenting in part.

Phillip North, Renee Levay Stewart, Brigham A. Dixson, and Brent A. Kinney (in trial court), Nashville, Tennessee for the appellant, Mark Flora, M.D.

Richard D. Piliponis, Benjamin J. Miller, and Sarah L. Martin, Nashville, Tennessee, for the appellees, Robert Crotty and Jennifer Crotty.

Marty R. Phillips and Craig P. Sanders, Jackson, Tennessee, for the amicus curiae, Tennessee Defense Lawyers Association.

## OPINION
### FACTUAL AND PROCEDURAL BACKGROUND

This interlocutory appeal arises out of a healthcare liability lawsuit brought by Plaintiff/Appellees Robert and Jennifer Crotty against Defendant/Appellant urologist Mark Flora, M.D.[1]

On January 3, 2016, Dr. Flora performed surgery on Robert Crotty to treat a kidney stone. The procedure proved more challenging than expected because part of the kidney stone was reportedly impacted, or embedded into the wall of Mr. Crotty's ureter. During the surgery, Dr. Flora placed a stent in Mr. Crotty's ureter to allow fluid to drain properly.

Five days later, Mr. Crotty came to the hospital reporting worsening pain. The next day, January 9, 2016, Mitchell Wiatrak, M.D., a urologist in the same practice group as Dr. Flora, performed a second surgery on Mr. Crotty. In the course of that procedure, Dr. Wiatrak noted that Mr. Crotty's ureter was perforated and that fluid was leaking outside of Mr. Crotty's collecting system. Dr. Wiatrak removed the stent Dr. Flora had placed, but he could not establish proper drainage. Consequently, the next day, January 10, 2016, Mr. Crotty received a nephrostomy tube, to facilitate needed drainage.[2] Ultimately, another physician had to remove Mr. Crotty's kidney.

---

[1] Because this is an interlocutory appeal, the facts have not yet been determined. The basic events are largely undisputed, and we summarize them from the parties' pleadings, motions in the trial court, and various exhibits filed in support of those motions, including deposition transcripts, expert disclosures, and medical records.

[2] Nephrostomy is "[s]urgery to make an opening from the outside of the body to the renal pelvis (part of the kidney that collects urine). This may be done to drain urine from a blocked kidney or blocked ureter into a bag outside the body." *Nephrostomy*, Definition within the *NCI Dictionary of Cancer Terms*,

On March 10, 2017, Mr. Crotty and his wife Jennifer Crotty sued Dr. Flora in the Circuit Court of Davidson County. The complaint alleged, *inter alia*, that Dr. Flora (1) negligently perforated Mr. Crotty's ureter during the initial procedure, (2) negligently either failed to recognize that Mr. Crotty's ureter had been perforated or failed to acknowledge the perforation, and (3) negligently discharged Mr. Crotty without telling him that his ureter had been perforated. The damages sought included past and future medical expenses.[3]

The answer filed by Dr. Flora generally denied any negligence in his treatment of Mr. Crotty. Relevant to this appeal, the answer reserved the right to amend to assert comparative fault "[s]hould discovery reveal that negligent acts or omissions of Plaintiffs and/or non-parties caused or contributed to Plaintiffs' injuries and damages." Also relevant to this appeal, the answer asserted that Tennessee Code Annotated section 29-26-119, a provision of the Health Care Liability Act, barred the Plaintiffs from recovering damages paid by a collateral source.

Discovery ensued. The parties deposed the Crottys, Dr. Flora, Dr. Wiatrak, and experts for both sides.

At no point did Dr. Flora seek to amend his answer. Instead, on December 4, 2019, Dr. Flora moved for partial summary judgment.[4]

The trial court granted Dr. Flora's motion in part. The trial court acknowledged a factual dispute on precisely *when* Mr. Crotty's ureter was perforated. It concluded,

---

*Nat'l Cancer Inst.*, https://www.cancer.gov/publications/dictionaries/cancer-terms/def/nephrostomy (last visited July 20, 2023).

[3] The complaint also sought non-economic damages in excess of $750,000 and asserted that any cap on jury-awarded damages imposed pursuant to Tennessee Code Annotated sections 29-39-102(e) and (g) would violate their rights under various provisions of the Tennessee and United States Constitutions. The assertions in the Crottys' complaint predate our decision in *McClay v. Airport Management Services LLC*, 596 S.W.3d 686, 696 (Tenn. 2020) (rejecting similar constitutional arguments). These claims are not at issue in this appeal.

[4] The judge originally assigned to the case, Judge Hamilton V. Gayden, Jr., recused himself before ruling on Dr. Flora's motion. The case was then transferred to Judge Joe P. Binkley, Jr.

however, that even if a jury determined that the perforation occurred during the procedure performed by Dr. Flora, such an injury "is a known complication of the procedure performed by Defendant Flora that occurs in the absence of negligence." For that reason, the trial court dismissed the claim that Dr. Flora negligently perforated Mr. Crotty's ureter, knew it had been perforated, and concealed that fact from Mr. Crotty.[5]

Trial on the remaining claims was set for September 21, 2020. That trial date was later continued to August 16, 2021 due to the Covid-19 pandemic.

As the trial date approached, the parties filed an array of pretrial motions. As relevant here, the Crottys filed a motion in limine asking the trial court to prohibit Dr. Flora from commenting, arguing, or submitting any evidence that any person other than Dr. Flora was at fault for Mr. Crotty's injuries. The motion pointed out that Dr. Flora's answer had never been amended to plead the doctrine of comparative fault. As a result, the Plaintiffs argued, Dr. Flora was precluded from asserting responsibility for the injury by anyone else, under Tennessee Rule of Civil Procedure 8.03 as applied in *George v. Alexander*, 931 S.W.2d 517 (Tenn. 1996).

The Crottys also filed a related motion in limine; this one asked the trial court to specifically exclude any comment, argument, or evidence asserting or suggesting fault by Dr. Wiatrak, who was never made a party to the case. The motion sought to exclude any suggestion that Dr. Wiatrak caused any of Mr. Crotty's injuries.

In addition, the Crottys filed a pretrial motion regarding the assertion in Dr. Flora's answer that Tennessee Code Annotated section 29-26-119 precludes the Plaintiffs from recovering damages paid by a collateral source. The motion asked the trial court to rule that the statute does not abrogate the collateral source rule in this case, permit them to seek the full undiscounted amount of Mr. Crotty's medical expenses, and prohibit Dr. Flora from using evidence of insurance or related discounts.

Dr. Flora filed a single response opposing both of the Plaintiffs' pretrial motions on fault or causation by any person other than Dr. Flora, including but not limited to Dr. Wiatrak. Dr. Flora's response said he had "no intention of asserting comparative fault against any party or non-party," including Dr. Wiatrak. Dr. Flora nevertheless opposed the motions because he "intends to submit evidence that Mr. Crotty's injury was in part the

---

[5] This holding is not at issue in this interlocutory appeal.

result of a known complication that occurred during the procedure performed by Dr. Wiatrak, but not due to any negligent act or omission on the part of Dr. Wiatrak." Dr. Flora argued that "[s]uch evidence does not amount to a comparative fault allegation," so he did not have to amend his answer to plead fault by Dr. Wiatrak or anyone else under Rule 8.03.

On the collateral source rule issue, Dr. Flora filed his own motion taking the opposite position from the Crottys. His motion repeated the assertion in his answer that Tennessee Code Annotated section 29-26-119 applies. Based on Dr. Flora's interpretation of that statute, he asked the trial court to exclude evidence of medical expenses not paid by the Plaintiffs or by insurance they purchased because those were the only medical expenses the Plaintiffs could recover.

The trial court granted the Crottys' first general comparative fault motion in limine as unopposed but held a hearing on the pretrial motion specific to Dr. Wiatrak. After the hearing, the trial court ruled for the Crottys. It found that "the proffered expert proof that the events causing the loss of Mr. Crotty's [k]idney occurred during the subsequent treatment by Dr. Wiatrak constitutes blame shifting and thus required a specific assertion of comparative fault by Defendant."

On the pretrial motions on the collateral source rule, the trial court granted the motion filed by the Crottys and denied the motion filed by Dr. Flora. Its order stated that the Plaintiffs' medical expenses were paid, in whole or in part, by insurance purchased by the Crottys. Under Tennessee Code Annotated section 29-26-119, it held, the Plaintiffs could seek the "cost of reasonable and necessary medical care" charged by the provider, not merely the amounts paid. The trial court said it would let Dr. Flora "make an offer of proof as to the amounts paid" for Mr. Crotty's medical care, but under the collateral source rule, it excluded any evidence of the amounts paid or that the Plaintiffs had health insurance.

Dr. Flora asked the trial court to reconsider its orders, or let him pursue an interlocutory appeal. The trial court declined to change its prior orders but granted Dr. Flora's motion for interlocutory appeal under Tennessee Rule of Appellate Procedure 9.[6]

---

[6] Rule 9(a) of the Tennessee Rules of Appellate Procedure provides that:

[A]n appeal by permission may be taken from an interlocutory order of a trial court . . . only upon application and in the discretion of the trial and appellate court. In determining

The trial court's order included excerpts from the hearing transcript in which the trial court orally summarized the issues for appeal.

Dr. Flora applied for permission to appeal in the Court of Appeals under Tennessee Rule of Appellate Procedure 9(c), which the Court of Appeals denied. Dr. Flora then sought permission to appeal in this Court.[7] After reviewing the Crottys' response in opposition, this Court granted Dr. Flora's application for permission to appeal.

In contrast to an appeal as of right under Tennessee Rule of Appellate Procedure 3, "[w]hen dealing with an interlocutory appeal, the Court can and will deal only with those matters clearly embraced within the question certified to it." *Young v. City of LaFollette*, 479 S.W.3d 785, 789 (Tenn. 2015) (alteration in original) (quoting *Tenn. Dep't of Mental Health & Mental Retardation v. Hughes*, 531 S.W.2d 299, 300 (Tenn. 1975)); *see also Wallis v. Brainerd Baptist Church*, 509 S.W.3d 886, 896 (Tenn. 2016) (citing *Sneed v. City of Red Bank*, 459 S.W.3d 17, 22 (Tenn. 2014)).

Here, the trial court did not precisely frame the issues certified for interlocutory appeal. However, it generally certified (1) its grant of the Crottys' motion in limine under Tennessee Rule of Civil Procedure 8.03 to exclude any comment, argument, or evidence asserting fault by Dr. Wiatrak or suggesting Dr. Wiatrak caused Mr. Crotty's injuries; and (2) its order on the collateral source rule, permitting the Crottys to put on evidence of the full undiscounted amount of Mr. Crotty's medical expenses charged by the providers,

---

whether to grant permission to appeal, the following, while neither controlling nor fully measuring the courts' discretion, indicate the character of the reasons that will be considered: (1) the need to prevent irreparable injury, . . . (2) the need to prevent needless, expensive, and protracted litigation, . . . and (3) the need to develop a uniform body of law . . . .

Tenn. R. App. P. 9(a). Rule 9(b) continues, "When the trial court is of the opinion that an order, not appealable as of right, is nonetheless appealable, the trial court shall state in writing the specific issue or issues the court is certifying for appeal and the reasons for its opinion." Tenn. R. App. P. 9(b).

[7] Dr. Flora characterized his request to this Court as an "Application for an Extraordinary Appeal from the Denial of a Rule 9 Application" sought under Tennessee Rule of Appellate Procedure 10. In an order entered on December 14, 2021, we clarified that under Tennessee Rule of Appellate Procedure 9(c), Dr. Flora's request was properly brought as an application for permission to appeal under Tennessee Rule of Appellate Procedure 9, not Rule 10. The Court deemed Dr. Flora's application to be otherwise timely and opted to treat it as a Rule 11 application.

letting Dr. Flora make an offer of proof on the amounts actually paid by the Crottys, but prohibiting Dr. Flora from revealing those amounts or the existence of health insurance to the jury.[8]

## ANALYSIS

We consider first Rule 8.03 of the Tennessee Rules of Civil Procedure and the trial court's exclusion of any comment, argument, or evidence suggesting that Dr. Wiatrak was at fault or caused Mr. Crotty's injuries. We then turn to the issue on the collateral source rule.

## I.     Rule 8.03

Here, the Defendant seeks to introduce evidence that the damage to Mr. Crotty's ureter actually occurred during the first procedure performed by Dr. Wiatrak, six days after the procedure performed by Dr. Flora. For purposes of this appeal, it is undisputed that Dr. Flora did not amend his answer to affirmatively plead comparative fault by anyone, including Dr. Wiatrak.[9]

---

[8] The trial judge's order granting permission for the interlocutory appeal included the following excerpt from the transcript of the hearing, in which he orally outlined the issues for appeal:

> But I tend to agree, you know, I think I've settled on what I believe the statute says about the medical expenses and how they're to be treated in a healthcare liability case. You know, and *Dedmon* is a personal injury case. It's not a healthcare liability case. And healthcare liability statutes have treated medical expenses a little differently. But I tend to agree with Ms. Stewart. The language is very confusing in the Health Care Liability Act regarding medical expenses. And it seems to be in places contradictory. But I've tried to make peace with all that and tried to figure out—you know, you've got to land on something. You've got to make a decision. So I've made peace with it and think I understand it. But I don't think it would hurt to take another look at that. I think the bigger issue is the blame-shifting issue. That really needs a look by the appellate courts. And I understand that argument. I've got that same exact issue coming up this Friday. And it— it's very puzzling and confusing. But what I'm going to come down on, until I'm told otherwise, is 8.03 requires the defendant to name somebody to shift the blame to.

Transcript of Record in Vol. 8 at 1010–11 (32:24–33:22), Crotty v. Flora, No. 17C-614.

[9] In this Court, Dr. Flora argues that his answer satisfied his obligations under Rule 8.03, citing *Bidwell ex rel. Bidwell v. Strait*, 618 S.W.3d 309 (Tenn. 2021) and *Romine v. Fernandez*, 124 S.W.3d 599

Dr. Flora argues that that Rule 8.03 of the Tennessee Rules of Civil Procedure does not apply to this situation because the evidence regarding Dr. Wiatrak only negates the causation element of the Crottys' case, and Dr. Flora does not assert that Dr. Wiatrak was negligent or at fault. For that reason, Dr. Flora insists, he was not required under Rule 8.03 to identify Dr. Wiatrak in his answer as an alleged tortfeasor. Dr. Flora also argues that an interpretation of Rule 8.03 that would require him to name Dr. Wiatrak in his answer would put Rule 8.03 in conflict with a provision of the Health Care Liability Act that requires defendants who allege fault against a nonparty to file a "certificate of good faith" showing their "good faith basis" for alleging "fault" by the nonparty. *See* Tenn. Code. Ann. § 29-26-122(b) (2012).

### A. Comparative Fault

In 1992, this Court issued its landmark decision in *McIntyre v. Balentine*, replacing traditional contributory negligence with a common law system of modified comparative fault. 833 S.W.2d 52, 55–56 (Tenn. 1992). "Concepts of fairness and efficiency are the basis of comparative fault." *Owens v. Truckstops of Am.*, 915 S.W.2d 420, 424 (Tenn. 1996) (citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 67, at 468–70 (5th ed. 1984); *McIntyre*, 833 S.W.2d at 56, 58)). The adoption of a comparative fault

---

(Tenn. Ct. App. 2003). He points to passages in his answer that include generic references to comparative fault and an independent intervening cause, and a later response to an interrogatory in which he associated Mr. Crotty's alleged injury with his subsequent treatment. In this way, Dr. Flora now claims, he sufficiently invoked comparative fault as to Dr. Wiatrak and complied with Rule 8.03. This argument appears inconsistent with our reasoning in *Moreno v. City of Clarksville*, 479 S.W.3d 795, 807–08 (Tenn. 2015) (citing with approval *Shaffer v. Memphis Airport Auth., Serv. Mgmt. Sys., Inc.*, No. W2012-00237-COA-R9-CV, 2013 WL 209309, at *8 (Tenn. Ct. App. Jan. 18, 2013) (holding that a discovery response is not an answer under Tennessee Code Annotated section 20-1-119)). But, in any event, this argument was not made to the trial court, and in fact is at odds with Dr. Flora's assertion to the trial court: "Dr. Flora has no intention of asserting comparative fault against any party or non-party." We therefore decline to consider that argument in this appeal.

Dr. Flora also suggests that, notwithstanding the requirements of Rule 8.03, the evidence he seeks to utilize should be admissible because its substance could or should have been included in Dr. Wiatrak's original operative report and is necessary to avoid misleading the jury. We view this question as outside the scope of the issue described by the trial court in its grant of permission for an interlocutory appeal in this case.

system was intended to achieve "a more just apportionment of fault between plaintiffs and defendants." *Austin v. State*, 222 S.W.3d 354, 357 (Tenn. 2007).

In that spirit, the *McIntyre* Court limited[10] the doctrine of joint and several liability. 833 S.W.2d at 58. In its stead, *McIntyre* held:

> [F]airness and efficiency require that defendants called upon to answer allegations in negligence be permitted to allege, as an affirmative defense, that a nonparty caused or contributed to the injury or damage for which recovery is sought. In cases where such a defense is raised, the trial court shall instruct the jury to assign this nonparty the percentage of the total negligence for which he is responsible. However, in order for a plaintiff to recover a judgment against such additional person, the plaintiff must have made a timely amendment to his complaint and caused process to be served on such additional person. Thereafter, the additional party will be required to answer the amended complaint. The procedures shall be in accordance with the Tennessee Rules of Civil Procedure.

*Id.* Thus, under the new procedures outlined in *McIntyre*, defendants in negligence cases could allege "as an affirmative defense" that a nonparty "caused or contributed to" the injury or damage for which the plaintiff sought recovery. *Id.* The holding, however, created a potential statute of limitations predicament for plaintiffs. What if a defendant asserted that a nonparty caused or contributed to the injury after the statute of limitations had run? In that situation, the plaintiff would be deprived of the opportunity to bring the nonparty into the lawsuit.

Shortly after *McIntyre*, Tennessee's General Assembly embraced the Court's adoption of comparative fault and enacted a statute to address precisely this predicament.[11] *See Bidwell ex rel. Bidwell v. Strait*, 618 S.W.3d 309, 323 (Tenn. 2021). Tennessee Code

---

[10] Joint and several liability remains applicable in limited circumstances. *See, e.g.*, *Owens v. Truckstops of Am.*, 915 S.W.2d 420, 433 (Tenn. 1996) ("[T]he adoption of comparative fault did not alter that products liability law under which the liability of defendants in the chain of distribution of a product, who are liable under a theory of strict liability, is joint and several.").

[11] Act effective May 19, 1993, ch. 407 § 1, 1993 Tenn. Pub. Acts (codified as Tenn. Code Ann. § 20-1-119).

Annotated section 20-1-119, sometimes called the "comparative fault savings statute,"[12] provides a ninety-day "grace period" for plaintiffs to amend their complaint to add as a defendant a nonparty "alleged by a defendant to have caused or contributed to the plaintiff's injury, even if the statute of limitations . . . has expired."[13] *Bidwell*, 618 S.W.3d at 324 (citing Tenn. Code Ann. § 20-1-119 (2021 & Supp. 2023).

Around the same time, the Court amended Rule 8.03 of the Tennessee Rules of Civil Procedure to add comparative fault to the list of affirmative defenses.[14] The official

_____

[12] *See, e.g.*, 1 Lawrence A. Pivnick, Tennessee Circuit Court Practice § 1.7 n.1 (Dec. 2022)

[13] That statute currently provides:

(a)(1) In civil actions where comparative fault is or becomes an issue, if a defendant named in an original complaint initiating a suit filed within the applicable statute of limitations, or named in an amended complaint filed within the applicable statute of limitations, alleges in an answer or amended answer to the original or amended complaint that a person not a party to the suit caused or contributed to the injury or damage for which the plaintiff seeks recovery, and if the plaintiff's cause or causes of action against that person would be barred by any applicable statute of limitations but for the operation of this section, the plaintiff may, within ninety (90) days of the filing of the first answer or first amended answer alleging that person's fault either:

(A) Amend the complaint to add the person as a defendant . . .; or

(B) Institute a separate action against that person . . . .

. . . .

(b) A cause of action brought within ninety (90) days pursuant to subsection (a) shall not be barred by any statute of limitations.

Tenn. Code Ann. § 20-1-119 (2023). This section has been amended three times since its original passage: once in 1999 to add a provision addressing governmental entities, a second time in 2009 to incorporate minor clerical changes not relevant here, and a third time in 2023 to add a section specifying that a defendant in a civil action where comparative fault is an issue includes an insurance company that issued an uninsured motor vehicle coverage policy and was served with process.

[14] Following other amendments not relevant here, that rule now reads:

In pleading to a preceding pleading, a party shall set forth affirmatively facts in short and plain terms relied upon to constitute accord and satisfaction, arbitration and award, express assumption of risk, *comparative fault (including the identity or description of any other alleged tortfeasors)*,

- 10 -

comment to this amendment by the Court's Advisory Commission on the Rules of Practice and Procedure cautioned: "Note that the defendant must identify or describe other alleged tortfeasors who should share fault, or else the defendant normally would be barred from shifting blame to others at trial." Tenn. R. Civ. P. 8.03, adv. comm. cmt. (1993). The Court envisioned that section 20-1-119 and Rule 8.03 would work in tandem to effectuate the objectives of the comparative fault system. *See, e.g.*, *Owens*, 915 S.W.2d at 425 (commenting that, had the plaintiff's cause of action arisen after *McIntyre* and after the enactment of section 20-1-119, the defendant "still would have the right to assert that [nonparties] caused or contributed to the plaintiff's injury, and the plaintiff would have the right, for 90 days under Section 20-1-119, to assert a claim against such person or persons" (citing Tenn. R. Civ. P. 8.03 and 14.01)).

### B.  *George v. Alexander, Section 20-1-119, and Rule 8.03*

Soon after *McIntyre*, the enactment of section 20-1-119, and the amendment of Rule 8.03, the Court considered an appeal involving a situation similar to this appeal. In *George v. Alexander*, the plaintiff sued two anesthesiologists after she allegedly suffered nerve damage during a surgical procedure. 931 S.W.2d 517, 519 (Tenn. 1996). The defendants denied any negligence and reserved the right to amend their answer to assert "additional defenses" as discovery warranted. *Id.* In discovery, the defendants claimed they "had no definitive opinion" about the cause of the plaintiff's injuries. *Id.* They never amended their answer to affirmatively plead any additional defenses under Rule 8.03. *Id.*

Prior to trial, the *George* defendants sought to introduce expert testimony asserting that the plaintiff's injuries were actually caused by the nonparty surgeon's positioning of the patient's body later in the procedure. *Id.* at 519–20. The plaintiff moved to exclude the testimony, which the trial court denied. *Id.* at 520. The expert testimony was admitted,

---

discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, statute of repose, waiver, workers' compensation immunity, and any other matter constituting an affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court, if justice so requires, shall treat the pleading as if there had been a proper designation.

Tenn. R. Civ. P. 8.03 (emphasis added).

and the jury found in favor of the defendant anesthesiologists. *Id.* The plaintiff appealed to this Court. *Id.*

The question in *George* centered on the proper application of Rule 8.03. The plaintiff argued that the expert testimony shifted the blame for the injuries away from the defendants and onto the nonparty surgeon who positioned the plaintiff's body, so Rule 8.03 required the defendants to affirmatively plead the surgeon's comparative fault as a defense. *Id.* The defendants argued they had no such duty because they sought only to show that the nonparty surgeon was the cause in fact of the plaintiff's injuries, not that he was negligent or legally at fault. *Id.* at 520–21. Because the testimony only involved one element of negligence—cause in fact—Rule 8.03 never came into play and the testimony was admissible even absent an amendment to the defendant's answer. *Id.* at 521.

The *George* Court characterized the defendants' argument as "plausible at first blush," but nevertheless rejected it:

> [T]he defendants' position ignores the fact that "blame-shifting" in a negligence context actually has to do with the element of causation in fact. Once the defendant introduces evidence that another person's conduct fits this element, it has effectively shifted the blame to that person. Therefore, if the defendants' position were to be accepted, any defendant wishing to transfer blame to another person at trial could *always* maintain that it is not trying to show that the other's conduct satisfies the legal definition of negligence, but that it is merely trying to establish that the other person's conduct actually caused the injury. In the latter situation, however, the defendant has fully accomplished what Rule 8.03 was intended to prevent: it has effectively shifted the blame to another person without giving the plaintiff notice of its intent to do so. Therefore, the purpose of Rule 8.03 would be undermined to a substantial degree if the defendants' overly technical argument were to prevail.

*Id.* at 521 (emphasis in original).

Justice Lyle Reid penned a separate opinion in *George*, concurring only in the judgment. *Id.* at 522 (Reid, J., concurring in the judgment). In his view, the testimony was excludable under Rule 8.03 only to the extent that it established negligence by the surgeon

- 12 -

in positioning the plaintiff's body. *Id.* at 527. Under Justice Reid's preferred approach, a defendant could introduce evidence of an alternate cause in fact without affirmatively pleading comparative fault under Rule 8.03, but could not do so if that evidence also established negligence by a nonparty. *Id.*

The majority in *George* remained unpersuaded:

> [I]f the position advocated by defendants and the concurrence were to prevail, then the defendant, by carefully limiting its evidence of another person's role in causing the injuries to the element [of] causation in fact, could completely and effectively shift the blame to that person without affording the plaintiff any notice whatsoever of its intent. A defendant would still be justified in totally surprising the plaintiff and foisting the blame on other persons, a result that violates the purpose of Rule 8.03.

*Id.* at 521–22. Thus, *George* emphasized that Rule 8.03 requires defendants to be transparent, to give plaintiffs notice and a fair opportunity to bring into the litigation a nonparty who allegedly contributed to the plaintiff's injury. It held that, if a defendant in a negligence case asserts that a nonparty was a cause-in-fact of the plaintiff's injury, this amounts to "blame-shifting" that triggers a defendant's duty under Rule 8.03 to affirmatively plead that allegation, even if the defendant does not accuse the nonparty of negligence. *Id.* at 521.

Since that decision, as predicted in *Owens*, the Court has applied Rule 8.03 and section 20-1-119 in a harmonious way to implement the "[c]oncepts of fairness and efficiency [that] are the basis of comparative fault." *Owens*, 915 S.W.2d at 424 (citations omitted). For example, in *Brown v. Wal-Mart Disc. Cities*, the plaintiff was injured by slipping in spilled water and ice while in a store owned by defendant Wal-Mart. 12 S.W.3d 785, 786 (Tenn. 2000). The person who spilled the water and ice was never identified. *Id.* At trial, the jury was permitted to consider the fault of the unknown tortfeasor who spilled the water, and it attributed 70% of the fault to that person. *Id.* Ruling on the plaintiff's motion for a new trial, however, the trial judge concluded it had erred in letting the jury assign fault to the unidentified tortfeasor and issued an order holding the defendant liable for 100% of the judgment. *Id.* The Court of Appeals affirmed, and the defendant appealed to this Court. *Id.* at 787.

- 13 -

On appeal, the Court in *Brown* described Rule 8.03 as "a rule of pleading which allows a defendant to allege that a nonparty contributed to the plaintiff's damages, ultimately allowing the plaintiff to plead and serve, and the trier of fact to assign fault to, the comparative tortfeasor alleged in defendant's answer." *Id.* Under Rule 8.03, the Court said, "either the identity or a description of another potential tortfeasor is sufficient" to let the parties conduct discovery. *Id.* (citing *George*, 931 S.W.2d at 521–22).

The *Brown* Court then pointed out that section 20-1-119 enables plaintiffs "to plead and serve nonparties alleged in a defendant's answer as potential tortfeasors," even if the statute of limitations has run as to the nonparties. *Id.* at 788. Thus, it said, the statute "contemplates that the plaintiff will actually know the identity of the alleged individual or entity." *Id.* The Court reviewed how other jurisdictions interpreted their "comparative fault statute[s] and rules of pleading." *Id.* Ultimately, considering Rule 8.03, *George*, and section 20-1-119, *Brown* held that, "unless the nonparty is identified sufficiently to allow the plaintiff to plead and serve process on such person pursuant to Tenn. Code Ann. § 20-1-119, the trial court should not permit the attribution of fault to the nonparty." *Id.* at 787–88.

Similarly, in *Austin v. State*, this Court considered whether plaintiffs can rely on the 90-day grace period in section 20-1-119 to sue nonparties if a defendant's answer does not explicitly allege comparative fault under Rule 8.03. 222 S.W.3d 354 (Tenn. 2007). The plaintiffs in *Austin* were injured in a car accident and sued the county for negligence in signage and maintenance of the intersection. *Id.* at 355–56. The county's answer asserted that the intersection was under the control of the State, not the county. *Id.* at 356. The plaintiffs then filed a complaint against the State, which responded with a motion for summary judgment based on expiration of the statute of limitations. *Id.* The plaintiffs argued they could rely on the ninety-day grace period in section 20-1-119, even though the county did not assert comparative fault in its answer. *Id.* The trial court granted summary judgment for the State, and the Court of Appeals affirmed. *Id.* The plaintiffs then appealed to this Court. *Id.*

The defendant State in *Austin* argued that section 20-1-119 was never triggered because the county's answer did not explicitly allege that a nonparty caused or contributed to the plaintiff's injury. *Id.* at 357. The Court disagreed. It noted that past cases had rejected narrow construction of section 20-1-119 and stressed that "a plaintiff should not be denied an opportunity to recover against that potential tortfeasor simply because a

- 14 -

defendant's answer did not follow a precise legal formula." *Id.* at 357–58 (citing *Romine v. Fernandez*, 124 S.W.3d 599, 604–05 (Tenn. Ct. App. 2003). Concomitantly, under Rule 8.03:

> A defendant is not required to allege the fault of the nonparty explicitly or use the words "comparative fault." Consistent with the liberal pleading standards of the Tennessee Rules of Civil Procedure, the determination of whether comparative fault is an issue cannot turn on the presence or absence of such precise language.

*Id.* at 358 (citing *Karash v. Pigott*, 530 S.W.2d 775, 777 (Tenn. 1975)).

Consistent with *George*'s reasoning on blame-shifting, the *Austin* Court explained that, although the county's answer did not explicitly allege that the State was at fault, "the clear implication of the allegation that the State controlled the stop sign is that any negligence in the placement or maintenance of the stop sign should be attributed to the State." *Id.* at 358. It rejected the State's argument that the county's answer did not assert comparative fault but instead asserted a "general defense" that simply denied all fault. *Id.* at 358–59. The Court concluded that the county's answer "raise[d] the affirmative defense of comparative fault," so the plaintiffs could rely on the ninety-day grace period in section 20-1-119 to sue the State. *Id.* at 359.

Since then, this Court has commented that construing section 20-1-119 as a remedial statute is "consistent with the liberal pleading standards of the Tennessee Rules of Civil Procedure," citing Rule 8.03. *Bidwell*, 618 S.W.3d at 324 (citing *Austin*, 222 S.W.3d at 358). It has eschewed narrow construction of either Tennessee Code Annotated section 20-1-119 or Rule 8.03, and has instead applied them synergistically, "in a manner consistent with the concepts of fairness and efficiency that underlie the comparative fault system." *Id.* (quoting *Austin*, 222 S.W.3d at 357).

## C. Defendant's Argument

Here, Dr. Flora seeks to submit evidence at trial that Mr. Crotty's injury occurred during the procedure performed by Dr. Wiatrak, but Dr. Flora does not seek to prove that Dr. Wiatrak was negligent. He argues that that Rule 8.03 does not apply because the evidence about Dr. Wiatrak is part of his general defense; it negates a required element of the Crottys' case, namely, causation. Dr. Flora emphasizes that he does *not* believe Dr. Wiatrak was negligent or a tortfeasor legally at fault for Mr. Crotty's injuries.

Dr. Flora points out that Rule 8.03 requires a responsive pleading to "set forth affirmatively facts in short and plain terms relied upon to constitute . . . comparative *fault* (including the identity or description of any other alleged *tortfeasors*)." Tenn. R. Civ. P. 8.03 (emphasis added). Because he does not assert "fault" by Dr. Wiatrak or that Dr. Wiatrak is a "tortfeasor," he argues, Rule 8.03 did not require him to set forth facts supporting the affirmative defense of comparative fault.

This is a fair point. The language in Rule 8.03 *does* use the terms "fault" and "tortfeasor." Unfortunately for Dr. Flora, however, that argument was made—and rejected—in *George v. Alexander*. Indeed, the Court in *George* specifically called out the very thing that happened: "[T]he defendant, by carefully limiting its evidence of another person's role in causing the injuries to the element of causation in fact, could completely and effectively shift the blame to that person without affording the plaintiff any notice whatsoever of its intent." 931 S.W.2d at 521. Dr. Flora's interpretation would justify "totally surprising the plaintiff and foisting the blame on other persons, a result that violates the purpose of Rule 8.03." *Id.* at 521–22. *George* noted that such an interpretation would eviscerate the transparency Rule 8.03 requires: "[A]ny defendant wishing to transfer blame to another person at trial could *always* maintain that it is not trying to show that the other's conduct satisfies the legal definition of negligence, but that it is merely trying to establish that the other person's conduct actually caused the injury." *Id.* at 521 (emphasis in original).

For that reason, Dr. Flora can hardly claim surprise that his decision not to even mention Dr. Wiatrak in his answer resulted in the trial court's decision under Rule 8.03 and *George* to exclude evidence suggesting Dr. Wiatrak was the cause in fact of Mr. Crotty's injuries. As in *Austin*, even though Dr. Flora does not explicitly allege that Dr. Wiatrak

- 16 -

was at fault, "the clear implication of the allegation" that Mr. Crotty's injuries occurred during Dr. Wiatrak's surgery "is that any negligence . . . should be attributed to" Dr. Wiatrak, not Dr. Flora. *See Austin*, 222 S.W.3d at 358. The allegation makes Dr. Wiatrak a potential tortfeasor. This is precisely what *George* described as "blame-shifting." 931 S.W.2d at 521.[15]

Citing recent amendments to the Health Care Liability Act, Dr. Flora nevertheless argues that, if we fail to overrule *George*, calamity awaits. He argues that *George* puts Rule 8.03 squarely in conflict with Tennessee Code Annotated section 29-26-122(b),[16] which requires defendants who allege fault against a nonparty to file a "certificate of good

---

[15] Dr Flora also contends *George* does not apply to this case based on a comment in *King v. Anderson County*, that "[c]ause in fact or 'actual cause' means 'that the injury or harm would not have occurred 'but-for' the defendant's negligent conduct." 419 S.W.3d 232, 246 (Tenn. 2013) (quoting *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993)). From this, Dr. Flora argues that "causation in fact," as the term is used in *George*, refers solely to an element of negligence. Consequently, Dr. Flora argues that absent some accompanying evidence of negligence by Dr. Wiatrak, the evidence he sought to use at trial is not the sort of evidence referred to in *George*. Respectfully, this argument is essentially a re-packaging of the approach Justice Reid advocated in his *George* concurrence, which was soundly rejected by the *George* majority. *See* 931 S.W.2d at 521–22.

[16] Tennessee Code Annotated section 29-26-122(b) provides:

(b) Within thirty (30) days after a defendant has alleged in an answer or amended answer that a non-party is at fault for the injuries or death of the plaintiff and expert testimony is required to prove fault as required by § 29-26-115, each defendant or defendant's counsel shall file a certificate of good faith stating that:

(1) The defendant or defendant's counsel has consulted with one (1) or more experts, which may include the defendant filing the certificate of good faith, who have provided a signed written statement confirming that upon information and belief they:

(A) Are competent under § 29-26-115 to express an opinion or opinions in the case; and

(B) Believe, based on the information reviewed concerning the care and treatment of the plaintiff for the incident or incidents at issue, that there is a good faith basis to allege such fault against another consistent with the requirements of § 29-26-115 . . . .

Tenn. Code. Ann. § 29-26-122(b)(1).

faith" showing there is "a good faith basis to allege such fault against another . . . ." Tenn. Code Ann. § 29-26-122(b)(1)(B).

On Defendant's telling, section 29-26-122(b) puts him in a bind. Because he does not assert Dr. Wiatrak was negligent, it is not possible for him to comply with the good-faith certificate requirement. That in turn prevents him from pleading "facts in short and plain terms" to support his alternate cause-in-fact allegation under Rule 8.03 as interpreted in *George*. Because *George* leaves him caught between a rock and a hard place, Dr. Flora insists, *George* must yield to this provision in the Health Care Liability Act.

The procedural posture of this case does not require us to resolve whether Dr. Flora would have been required under section 29-26-122(b) to file a certificate of good faith, had he amended his answer to allege that Mr. Crotty's injury occurred during the procedure performed by Dr. Wiatrak, rather than the procedure performed by Dr. Flora.[17] We need only determine whether section 29-26-122(b) makes it necessary for us to reverse or modify *George*. It does not.

As a whole, the Health Care Liability Act compels transparency and early disclosure of all parties' allegations and the factual basis for those allegations, to facilitate early resolution of claims if that is possible and fairness at trial if it is not. *See, e.g.*, *Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 554 (Tenn. 2013) (noting statutory provisions that establish an "express notice requirement"; "facilitate early resolution of healthcare liability claims by requiring plaintiffs to advise defendants who the plaintiff is, how to reach him or her, and how to contact his or her attorney"; and "serve

---

[17] In the alternative, Dr. Flora cites other statutes related to section 29-26-122(b) to predict "travesty" in the form of near-limitless obligations for defendants if we decline to overrule *George*. Dr. Flora observes that section 29-26-122(b) cross-references section 29-26-115, which outlines the burden of proof for a claimant who asserts negligence. *See* Tenn. Code Ann. § 29-26-115. Dr. Flora also points out a third statute stating that a defendant's failure to file a good faith certificate after alleging fault of a nonparty make the allegations "subject to being stricken with prejudice." Tenn. Code Ann. § 29-26-122(c). If *George* continues to require defendants to include in their answer allegations about alternative causes-in-fact of plaintiffs' injuries, Dr. Flora claims, health care defendants will have no choice but to plead comparative fault and file good faith certificates as to each and every clinical provider who treated a plaintiff. Respectfully, *George* and the provisions of the Health Care Liability Act cited by Dr. Flora have co-existed for over a decade, and we have not yet seen indications that the scenario Dr. Flora predicts has come to pass. Regardless, in the procedural posture of this case, we need not rule on what Dr. Flora's statutory obligations would have been had he included in his answer an allegation that Mr. Crotty's injuries occurred during the procedure by Dr. Wiatrak.

an investigatory function, equipping defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early discovery of potential co-defendants and early access to a plaintiff's medical records."). Section 29-26-122(b) specifically compels transparency and early disclosure. It requires a party who alleges fault by a nonparty to show the basis for that allegation, to let the opposing party to evaluate it, conduct discovery, and decide whether to bring the nonparty into the litigation. These provisions promote the goals of the comparative fault system: fairness, efficiency, and a just apportionment of fault.

Rule 8.03 and section 20-1-119, as interpreted by this Court, interact to accomplish those same goals. In *Brown*, we described Rule 8.03 as a rule intended to "allow[] a defendant to allege that a nonparty contributed to the plaintiff's damages" and let the plaintiff bring that nonparty into the litigation, while section 20-1-119 enables a plaintiff to plead in such nonparties even if "the statute of limitations would otherwise bar the plaintiff's cause of action against the comparative tortfeasor alleged in defendant's answer." *Brown*, 12 S.W.3d at 787–88. It would be passing strange for us to hold that, by enacting statutes that compel transparency and facilitate fairness, efficiency, and a just apportionment of fault, the legislature intended to abrogate nearly two decades of comparative fault jurisprudence advancing those same goals.

As explained in *Austin*, Rule 8.03 does not require defendants "to allege the fault of the nonparty explicitly or use the words 'comparative fault.'" *Austin*, 222 S.W.3d at 358. It does not require "precise language." *Id.* In *Austin*, the county's mere allegation that the State controlled the intersection where the accident occurred was enough to let the plaintiff bring the State into the litigation under section 20-1-119. *Id.* Here, Dr. Flora put nothing in his answer to afford the Crottys that same opportunity. We are not persuaded that section 29-26-122(b) left Dr. Flora no choice but to omit from his answer anything that would have told the Crottys he intended to "effectively shift the blame to" Dr. Wiatrak. *See George*, 931 S.W.2d at 521.

In short, though Dr. Flora insists the Court must overturn *George*, he has not offered a convincing argument why doing so is necessary. "We are mindful that the power of this Court to overrule former decisions is very sparingly exercised and only when the reason is compelling." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 262 (Tenn. 2015) (internal quotation marks and citation omitted). We have described the types of reasons that might qualify: "Generally, well-settled rules of law will be overturned only

- 19 -

when there is obvious error or unreasonableness in the precedent, changes in conditions which render the precedent obsolete, the likelihood that adherence to precedence would cause greater harm to the community than would disregarding stare decisis, or an inconsistency between precedent and a constitutional provision." *In re Estate of McFarland*, 167 S.W.3d 299, 306 (Tenn. 2005). None are present here.

Accordingly, we respectfully decline to modify our holding in *George*. We hold that the trial court did not err in applying Rule 8.03 and *George* to exclude evidence at trial that the injury to Mr. Crotty's ureter occurred during the procedure performed by Dr. Wiatrak.

## II.     Application of Collateral Source Rule

The second issue in this case requires us to consider the effect of the Health Care Liability Act on the common law collateral source rule. As outlined above, the parties here filed cross-motions in limine regarding evidence of Mr. Crotty's medical expenses that would be admitted at trial. The Crottys' motion argued that Tennessee Code Annotated section 29-26-119 does not apply because Mr. Crotty fits within the express exception in the statute. The motion asked the trial court to permit the Plaintiffs to submit evidence of the full, undiscounted amount of Mr. Crotty's medical expenses and, under the collateral source rule, prohibit Dr. Flora from introducing evidence of insurance or related discounts on medical fees. Dr. Flora's cross-motion asserted that Tennessee Code Annotated section 29-26-119 precludes Plaintiffs from recovering, or introducing evidence of, the amount of medical bills charged but never paid by Plaintiffs or their insurance. Based on Dr. Flora's interpretation of the statute, his cross-motion asked the trial court "to exclude any mention or introduction of evidence regarding medical expenses that were not paid by Plaintiffs or paid by insurance that Plaintiffs actually purchased."

The trial court granted the Plaintiffs' motion and denied Dr. Flora's motion. It reasoned:

> Because Plaintiff's claimed medical expenses were paid in whole or in part by insurance purchased in whole or in part privately and individually, the Court finds that Tenn. Code Ann. § 29-26-119 permits Plaintiff to claim the "cost of reasonable and necessary medical care" and that "cost of reasonable and necessary medical care" refers to the amount charged by the provider,

- 20 -

not the amount paid. Defendant may make an offer of proof as to the amounts paid for the medical care at issue, but otherwise the collateral source rule is in full force and effect and neither the amounts paid nor the fact that Plaintiff had health insurance may be disclosed to the jury.

On appeal, Dr. Flora and amicus curiae Tennessee Defense Lawyers Association argue that Tennessee Code Annotated section 29-26-119 abrogated the collateral source rule in health care liability cases like this one. They maintain that the trial court erred in applying the collateral source rule to let the Plaintiffs submit evidence of undiscounted medical expenses and prohibit Dr. Flora from submitting evidence of medical expenses actually paid by the Plaintiffs or their insurance.

The collateral source rule is a longstanding common law doctrine. In *Dedmon v. Steelman*, this Court explained it by quoting the Restatement (Second) of Torts:

> The collateral source rule as applied in Tennessee and elsewhere is succinctly articulated in the widely-cited Section 920A of the Restatement (Second) of Torts:
>
> > (1) A payment made by a tortfeasor or by a person acting for him to a person whom he has injured is credited against his tort liability, as are payments made by another who is, or believes he is, subject to the same tort liability.
> >
> > (2) Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.

535 S.W.3d 431, 442 (Tenn. 2017) (quoting *Restatement (Second) of Torts* § 920A (1977) (entitled "Effect of Payments Made to Injured Party")).

As reflected in this Restatement section, the collateral source rule is both a substantive rule of law and an evidentiary rule. *Id.* at 443. "Substantively, it affects the amount of damages that may be awarded against a defendant by prohibiting reduction of a plaintiff's recovery by benefits from sources unrelated to the tortfeasor." *Id.* "The

evidentiary component of the collateral source rule flows from the rule of law. If a plaintiff's recovery may not be reduced by collateral benefits, then 'evidence that a plaintiff has received benefits or payments from a collateral source independent of the tortfeasor's procuration or contribution' must be excluded." *Id.* at 444 (quoting *Bozeman v. State*, 879 So.2d 692, 699 (La. 2004)). Thus, in personal injury cases where the collateral source rule applies, plaintiffs may submit evidence of the injured party's full, undiscounted medical bills as proof of the party's "reasonable medical expenses," and defendants are precluded from submitting evidence of discounted amounts for medical services accepted by medical providers because of the injured party's insurance. *Id.* at 467.

The issue in this appeal centers on the trial court's ruling on the evidentiary issue. Generally, the admissibility of evidence is within the sound discretion of the trial court, and its decision to admit or exclude evidence is overturned on appeal only when there is an abuse of discretion. *Borne v. Celadon Trucking Servs. Inc.*, 532 S.W.3d 274, 294 (Tenn. 2017) (internal citations omitted). An abuse of discretion may occur, however, if the trial court applies an incorrect legal standard. *Id.* The question here, then, is whether the trial court erred in holding that "the collateral source rule is in full force and effect" in this case.

On appeal, Dr. Flora argues that Tennessee Code Annotated section 29-26-119 abrogates the collateral source rule, so the trial court abused its discretion by applying an incorrect legal standard. Addressing this question requires us to interpret the statute.

As a prefatory matter, we note that the trial court's order on the parties' cross-motions stated that Mr. Crotty's "claimed medical expenses were paid in whole or in part by insurance purchased in whole or in part privately and individually." This language in the trial court's order mirrors part of the language in the statute. *See* Tenn. Code Ann. § 29-26-119. Though the trial court's framing of the issue on appeal was not precise, both the trial court and the parties focused on the proper interpretation of section 29-26-119 and not the underlying facts on precisely how Mr. Crotty's insurance was purchased and how the medical expenses were paid.[18] Consequently, for this appeal, we focus our analysis on

_____

[18] The plaintiffs' pretrial motion suggested that there is no factual dispute between the parties regarding Mr. Crotty's insurance and referred to supporting testimony and documentation. On review, it appears that the appellate record may not contain all the evidence pertinent to the trial court's finding. However, neither party has argued before this Court that the evidence preponderates against the trial court's factual finding or asserted that the factual finding itself was an abuse of discretion. *See* Tenn. R. App. P. 13(d); *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) ("A court abuses its discretion

the legal issue and defer to the trial court's conclusion that Mr. Crotty's claimed medical expenses were paid "in whole or in part by insurance" that was "purchased in whole or in part privately and individually."

On that premise, we proceed. Section 29-26-119 provides:

In a health care liability action in which liability is admitted or established, the damages awarded may include (in addition to other elements of damages authorized by law) actual economic losses suffered by the claimant by reason of the personal injury, including, but not limited to, cost of reasonable and necessary medical care, rehabilitation services, and custodial care, loss of services and loss of earned income, but only to the extent that such costs are not paid or payable and such losses are not replaced, or indemnified in whole or in part, by insurance provided by an employer either governmental or private, by social security benefits, service benefit programs, unemployment benefits, or any other source except the assets of the claimant or of the members of the claimant's immediate family and insurance purchased in whole or in part, privately and individually.

Tenn. Code Ann. § 29-26-119. To say that section 29-26-119 is not a model of clarity is perhaps an understatement. We proceed methodically.

As a whole, section 29-26-119 addresses what "the damages awarded may include" in a health care liability action. *Id.* Thus, it operates directly as to the *substantive* aspect of the collateral source rule, because it speaks to "the amount of damages that may be awarded against a defendant." *Dedmon*, 535 S.W.3d at 443. Still, the statute indirectly affects the evidentiary component of the collateral source rule, which governs evidence that may be admitted or excluded. *Id.* at 444. Analysis of section 29-26-119 is important to determine whether the trial court in this case applied the correct legal standard.

---

when it causes an injustice to the party challenging the decision by . . . basing its decision on a clearly erroneous assessment of the evidence.") Moreover, at oral argument, counsel for the Crottys asserted that Mr. Crotty had insurance through his employer and the premiums were deducted from his paycheck. *See Robert Crotty, Et Al. v. Mark Flora, M.D.*, YouTube (Oct. 5, 2022), at 43:44, https://www.youtube.com/watch?v=zY_qhVcPyvw&list=PLiM19icVezb2pzcgKsFlTXWGZ5_60FALG&index=8.

In considering section 29-26-119, it is worth noting that, when it was enacted nearly 50 years ago in 1975, health management organizations (HMOs) were in their incipiency. *See* A Brief History of Managed Care, Nat'l Council on Disability, https://www.ncd.gov/policy/appendix-b-brief-history-managed-care (last visited Aug. 30, 2023). The legislature would not have had in mind the current situation, where HMOs contractually require health care providers to discount fees and pay insureds' medical expenses partly by requiring providers to forgive a portion of them. *See Lawson v. Hawkins Cnty.*, 661 S.W.3d 54, 59 (Tenn. 2023) ("In interpreting statutory provisions, our role is to determine how a reasonable reader would have understood the text at the time it was enacted." (citing *State v. Deberry*, 651 S.W.3d 918, 924 (Tenn. 2022))).

In a similar vein, Tennessee Supreme Court cases applying section 29-26-119 appear to simply refer to the claimants' undiscounted medical fees as their medical expenses, with no reference to discounted fees. This is consistent with longstanding common law that allowed plaintiffs to use their full, undiscounted medical bills to show reasonable and necessary medical expenses. *Dedmon*, 535 S.W.3d at 466. Based on that premise, prior Supreme Court cases on section 29-26-119 have not mentioned discounted fees and have framed the question as whether defendants can get "credit" under the statute for amounts paid by insurance or other such benefits.

For example, in *Nance by Nance v. Westside Hosp.*, this Court described section 29-26-119 as having "eliminated as damages that may be awarded against health care providers, sums paid or payable to victims of medical malpractice from sources identified therein." 750 S.W.2d 740, 741 (Tenn. 1988). The opinion framed the question on appeal as whether worker's compensation benefits are included in a statute "that gives health care providers a reduction in damages for benefits available to tort victims from several specifically named collateral sources 'or any other source.'" *Id.* at 741. *Nance* made no mention of discounted fees.

Also, in *Hunter v. Ura*, the Court considered the part of section 29-26-119 at issue here, the exception for insurance purchased privately. 163 S.W.3d 686, 710–11 (Tenn. 2005). Like *Nance*, *Hunter* includes no reference to discounted medical fees. Similar to *Nance*, *Hunter* framed the question as whether the defendant health care providers could get a "credit" against the jury's verdict under section 29-26-119 for a payment under the decedent's insurance plan. *Id.* at 691. In its reasoning, the Court noted that because section 29-26-119 "is in derogation of the common law rule that allowed plaintiffs to recover

- 24 -

medical expenses, whether paid by insurance or not, it must be strictly construed." *Id.* at 711. *Hunter* ultimately held that "the trial court properly applied Tennessee Code Annotated section 29-26-119 in denying the defendants' motion for a credit against the jury's verdict based on the payment" because the decedent had contributed to the insurance plan. *Id.*

*Hunter* relied heavily on *Steele v. Ft. Sanders Anesthesia Group, P.C.*, a Court of Appeals decision that also construed the language in section 29-26-119 that creates an exception for insurance purchased privately. *Id.* (citing *Steele*, 897 S.W.2d 270, 282 (Tenn. Ct. App. 1994)). *Hunter* favorably cited *Steele* as holding that section 29-26-119 "permits a plaintiff to introduce medical expenses when the plaintiff has paid part of the insurance premium." *Id.* (quoting *Steele*, 897 S.W.2d at 282). *Steele* likewise does not mention discounted fees.

Thus, *Nance*, *Hunter*, and *Steele* all appear to permit claimants to submit evidence of the full, undiscounted medical expenses; none refer to discounted fees. All viewed section 29-26-119 as addressing whether health care liability defendants could get credit for medical expenses paid by insurance or similar benefits. These cases form the backdrop for our consideration of the text of the statute.

At the outset, section 29-26-119 states that, in a health care liability action, "the damages awarded may include . . . actual economic losses suffered by the claimant." Tenn. Code Ann. § 29-26-119. The statute does not define the term "actual economic losses suffered by the claimant." *Id.*

In looking at the phrase "actual economic losses suffered by the claimant," Black's Law Dictionary defines "actual" as "[e]xisting in fact; real." *Actual, Black's Law Dictionary* (11th ed. 2019). It contrasts "actual" with "constructive," which means "[l]egally imputed; existing by virtue of legal fiction though not existing in fact." *Constructive, Black's Law Dictionary* (11th ed. 2019). The full, undiscounted fees are not legally imputed costs; they exist. *See Arthur v. Catour*, 833 N.E.2d 847, 853 (Ill. 2005) ("[P]laintiff received health-care services and became liable for the resulting expenses upon receipt of those services, not when the final bill was eventually issued. Her liability was not somehow nonexistent merely because the providers submitted bills directly to her insurer."); *see also* Lori A. Roberts, *Rhetoric, Reality, and the Wrongful Abrogation of the Collateral Source Rule in Personal Injury Cases*, 31 Rev. Litig. 99, 140 (2012) ("[B]ills

sent by medical care providers . . . are real obligations that, but for a plaintiff's private health care insurance, the patient would be responsible for satisfying."). On the front end, patients typically agree they are liable for all fees. If a patient's insurance company denies his claim, the patient gets no benefit from any discounts negotiated by the insurance company and must pay out of pocket the full, undiscounted fees. *Arthur*, 833 N.E.2d at 853 ("[I]t is not uncommon for an insurer, upon receipt of such bills, to deny coverage, leaving the patient/plaintiff personally liable for the balance. For example, the policy might have lapsed for nonpayment of premiums, or the policy may not cover some services, such as cosmetic or reconstructive surgery."); *Arthur v. Catour*, 803 N.E.2d 647, 650 (Ill. App. 2004), *aff'd*, 833 N.E.2d 847 (2005) ("Plaintiff was billed over $19,000 [in undiscounted medical expenses] and, *but for her insurance coverage*, she was liable for that amount.") (emphasis in original).

As a whole, the statute clearly contemplates at least some "losses" that will never come directly out of the claimant's pocketbook, such as those that are ultimately paid by insurance purchased in whole or in part by the claimant. Tenn. Code Ann. § 29-26-119 ("any other source except . . . insurance purchased in whole or in part, privately and individually"). That suggests the phrase "actual economic losses" is not limited to amounts actually paid but also includes financial liability incurred by claimants as a result of the personal injury.

This understanding is consistent with the definition of "loss" in the insurance context: "the amount of an insured's financial detriment by death or damage that the insurer is liable for." *Loss*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/loss (last visited June 22, 2023); *see also Loss*, *Black's Law Dictionary* 1132 (11th ed. 2019) ("The amount of financial detriment caused by an insured person's death or an insured property's damage, for which the insurer becomes liable"); *Loss*, *Am. Heritage Dictionary of the Eng. Language*, https://www.ahdictionary.com/word/search.html?q=loss (last visited June 22, 2023) ("The amount of a claim on an insurer by an insured").

We also consider the example of "actual economic losses suffered by the claimant" listed in the statute that is pertinent to this case—the "*cost* of reasonable and necessary medical care." Tenn. Code Ann. § 29-26-119 (emphasis added). The term "cost" is defined as "[t]he amount paid *or charged* for something; price or expenditure." *Cost*, *Black's Law Dictionary* 436 (11th ed. 2019) (emphasis added); *see also Cost*, *Merriam-Webster*

*Dictionary*, https://www.merriam-webster.com/dictionary/cost (last visited June 22, 2023) ("[T]he amount or equivalent paid *or charged* for something" (emphasis added)). Considering these definitions, for an insured claimant, the "cost of reasonable and necessary medical care" could be read as referring to either the amount charged (the full, undiscounted bills) or the amount paid (the discounted fees).

We look to applicable principles of statutory construction for guidance. First, to interpret statutes, courts seek to determine how the statutory text would have been understood when the statute was enacted. *Lawson*, 661 S.W.3d at 59 (citation omitted). In *Dedmon*, this Court recognized that longstanding common law in Tennessee permits plaintiffs in personal injury cases to use their full, undiscounted medical bills to satisfy the burden of proving the reasonable value of medical expenses. 535 S.W.3d at 466. Of course, *Dedmon* dealt with common law and not interpretation of a statute, but it shows how the reasonable value of medical expenses was likely understood when section 29-26-119 was enacted in 1975. More importantly, section 29-26-119 is in derogation of the common law collateral source rule, so the statute must "be strictly construed and confined to [its] express terms.'" *Moreno v. City of Clarksville*, 479 S.W.3d 795, 809 (Tenn. 2015) (quoting *Doyle v. Frost*, 49 S.W.3d 853, 858 (Tenn. 2001)).

Under these principles, the best reading of the phrase "cost of reasonable and necessary medical care" in section 29-26-119 is the full, undiscounted medical fees. It is consistent with how the phrase was likely understood when the statute was enacted, and it comports with *Hunter*'s directive to construe section 29-26-119 strictly because it "is in derogation of the common law rule that allowed plaintiffs to recover medical expenses, whether paid by insurance or not." *Hunter*, 163 S.W.3d at 711.

The next segment of section 29-26-119 sets out the circumstances in which the collateral source rule is abrogated. The statement of what the damages in a health care liability action "may include" is followed by a qualifier: "but only to the extent that such costs are not paid or payable . . . by insurance provided by an employer . . . or any other source." Tenn. Code Ann. § 29-26-119. This language abrogates the collateral source rule by limiting awardable damages to "actual economic losses . . . not paid or payable . . . by insurance . . . or any other source." *Id.*

The abrogation provision is followed by the private insurance exception at issue in this appeal. "Actual economic losses" are those "not paid or payable" by "any . . . source

- 27 -

*except* the assets of the claimant or of the members of the claimant's immediate family and insurance purchased in whole or in part, privately and individually." Tenn. Code Ann. § 29-26-119 (emphasis added). Thus, the phrase "paid or payable" applies to both the abrogation provision and the private insurance exception.[19] So we consider what "paid or payable" means in this context.

In interpreting the phrase "paid or payable," the term "payable" means a sum that "may, can, or must be paid." *Payable*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/payable (last visited June 22, 2023). Because the insured typically agrees on the front end he is liable for the full, undiscounted fees, the entire charged amount is "payable" from his perspective. The full, undiscounted medical fees are typically "paid" in three ways—the insurance company negotiates a discount under which part of the fees are forgiven, the insurance company pays part of them out-of-pocket at the discounted rate, and the patient pays the rest out-of-pocket. The fact that the insurer ultimately pays out-of-pocket a lesser, negotiated amount does not mean that the charged amount is not "payable."

Thus, under the statutory private insurance exception, the common law collateral source rule is *not* abrogated where the medical costs are "paid or payable" by "assets of the claimant or of the members of the claimant's immediate family and insurance purchased in whole or in part, privately and individually." Tenn. Code Ann. § 29-26-119. In other words, if the statutory exception applies, the statute does not preclude application of the common law collateral source rule.

In health care liability cases where the common law collateral source rule remains in effect, plaintiffs "may use their full, undiscounted medical bills to satisfy the burden of proving the reasonable value of medical expenses."[20] *Dedmon*, 535 S.W.3d at 466.

---

[19] The statute says damages may include actual economic losses "but only to the extent that such costs are not *paid or payable* . . . by insurance provided by an employer . . . or any other source"—the abrogation provision—"except the assets of the claimant or of the members of the claimant's immediate family and insurance purchased in whole or in part, privately and individually"—the exception. Tenn. Code Ann. § 29-26-119 (emphasis added).

[20] "To rebut the plaintiffs' proof that those charges are reasonable, defendants are free to submit any competent evidence in rebuttal that does not run afoul of the collateral source rule." *Dedmon*, 535 S.W.3d at 466 (noting that "a defendant is permitted to introduce relevant evidence regarding necessity, reasonableness, and whether a claimed service was actually rendered" (quoting *Fye v. Kennedy*, 991 S.W.2d

Assuming for purposes of this appeal that Mr. Crotty's medical expenses were paid "in whole or in part by insurance" that was "purchased in whole or in part privately and individually," the trial court did not err in holding that "the collateral source rule is in full force and effect" as the premise for its ruling on the parties' cross-motions in limine.

Accordingly, we affirm the trial court's evidentiary ruling.

## CONCLUSION

For the reasons stated herein, we affirm the decisions of the trial court on the motions in limine at issue in this interlocutory appeal. This case is remanded to the trial court for further proceedings consistent with this opinion. The costs of this appeal are taxed to Defendant Mark Flora, M.D., for which execution may issue if necessary.

_____
HOLLY KIRBY, JUSTICE

---

754, 764 (Tenn. Ct. App. 1998)). "The jury then determines the 'reasonable value' of the medical services in light of all of the evidence." *Id.*